## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

VICTOR AND PAMELA ROMERO, on behalf of themselves and all others similarly situated,

     Plaintiffs,

v.

CENTURYLINK, INC., a Louisiana corporation; CENTURYLINK COMMUNICATIONS, LLC, a Delaware limited liability company doing business in Minnesota; CENTURYLINK PUBLIC COMMUNICATIONS, INC., a Minnesota Corporation; CENTURYLINK SALES SOLUTIONS, INC., a Delaware corporation doing business in Minnesota as EMBARQ MINNESOTA INC. and CENTURYLINK, EMBARQ MINNESOTA INC. and DOES 1-50, inclusive,

     Defendants.

**CLASS ACTION COMPLAINT**


**JURY TRIAL DEMAND**

_____

    Plaintiffs Victor and Pamela Romero (hereinafter collectively referred to as "Plaintiffs"), individually and as representatives of a class of similarly situated persons, through the undersigned counsel, allege as follows:

### NATURE OF ACTION

    1.    This Class Action is brought to obtain declaratory, injunctive, equitable, and monetary relief as a result of Defendants' misleading and deceptive conduct adding false and unauthorized charges to customers' communications services (e.g., telephone, internet, television) accounts.  As outlined further below, Defendants' conduct violated applicable consumer protection statutes, breached customer contracts, and/or resulted in Defendants being

1

unjustly enriched at the expense of their customers. The relief sought, including an accounting by Defendants and the payment of refunds for all overcharges, is necessary and appropriate.

**PARTIES**

2.      Plaintiffs Victor and Pamela Romero, husband and wife, are citizens of the State of Minnesota, residing in Rockford, Minnesota. Plaintiffs were overcharged and injured in manner similar to the Class defined below as a result of Defendants' common and systematic policies complained of herein. Plaintiffs are qualified and appropriate representatives of a group of customers of Defendants who are similarly situated and have suffered harm in the same manner as Plaintiffs as a result of the actions and/or omissions of the Defendants described within.

3.      Defendants are CenturyLink, Inc., CenturyLink Communications, LLC, CenturyLink Public Communications, Inc., CenturyLink Sales Solutions, Inc.'s and Embarq Minnesota, Inc. (hereinafter collectively referred to as "Defendants" or "CenturyLink"). CenturyLink, Inc. is a Louisiana corporation doing business in the state of Minnesota as CenturyLink Communications, LLC, CenturyLink Public Communications, Inc., CenturyLink Sales Solutions, Inc., and Embarq Minnesota Inc. which are registered to do business in the State of Minnesota. Upon information and belief, CenturyLink Communications, LLC, CenturyLink Public Communications, Inc., CenturyLink Sales Solutions, Inc. and Embarq Minnesota Inc. are direct and/or indirect subsidiaries of CenturyLink, Inc. All profits of CenturyLink Communications, LLC, CenturyLink Public Communications, Inc., CenturyLink Sales Solutions, Inc., and Embarq Minnesota Inc. including those obtained from the practices complained of herein, are eventually up-streamed to CenturyLink, Inc., and reported on its financial statements.

4.      As described on its website, "CenturyLink (NYSE: CTL) is a global communications and IT services company focused on connecting its customers to the power of the digital world.  CenturyLink offers network and data systems management, big data analytics, managed security services, hosting, cloud, and IT consulting services.  The company provides broadband, voice, video, advanced data and managed network services over a robust 265,000-route-mile U.S. fiber network and a 360,000-route-mile

international transport network."

*Available at:* http://ir.centurylink.com/CorporateProfile.aspx?iid=4057179.

5.      At all material times, CenturyLink, Inc. and its subsidiaries and affiliates have maintained legal authority to transact business in this State, and have maintained operations throughout the State of Minnesota and this judicial District. CenturyLink is a large corporate provider of phone and data transmission services, including telephone, high-speed internet, and television services to residential and commercial consumers throughout the United States, including Minnesota.

6.      As a result of the challenged practices, Defendants generated and collected substantial revenue within the State of Minnesota during the relevant Class Period from Plaintiffs and members of the Class.

7.      All Defendants are affiliated entities. All Defendants do business in Minnesota as "CenturyLink" and hold themselves out to the public, Plaintiffs and the Class as "CenturyLink." All Defendants use common "CenturyLink" logos and trademarks in letters, billings, marketing, and advertisements directed to the public, Plaintiffs, and the Class.  This shared branding makes it difficult for the public, Plaintiffs, and class members to discern which of the affiliated defendants they are dealing with.

3

8.    The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants sued herein as DOES 1 through 50, inclusive, are currently unknown to Plaintiffs, who therefore sue Defendants by such fictitious names. Plaintiffs are informed and believe, and thereon allege, that each of the Defendants designated herein as DOES are legally responsible in some manner for the events and happenings referred to herein and caused injury and damage proximately thereby to Plaintiffs as hereinafter alleged. Plaintiffs will seek leave of court to amend this Complaint to reflect the true names and capacities of the Defendants designated hereinafter as DOES when those have been fully ascertained.

9.    Plaintiffs are informed and believe, and based thereon allege, that at all times mentioned herein, each of the Defendants was the agent, servant, employee, co-venturer, and co-conspirator of each of the remaining Defendants, and was at all times herein mentioned acting within the course, scope, purpose, consent, knowledge, ratification, and authorization of and for such agency, employment, joint venture, and conspiracy.

10.    Plaintiffs are further informed and believe, and based thereon allege, that at all relevant times, each Defendant was completely dominated and controlled by its Co-Defendants, and each was the alter ego of the other. Whenever and wherever reference is made in this Complaint to any conduct by Defendant or Defendants, such allegations and references shall also be deemed to mean the conduct of each of the Defendants, acting individually, jointly, and severally. Whenever and wherever reference is made to individuals who are not named as Defendants in this Complaint, but were employees and/or agents of Defendants, such individuals at all relevant times acted on behalf of Defendants named in this Complaint within the scope of their respective employments.

4

## JURISDICTION AND VENUE

11.    This Court has original jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a class action in which: (1) there are more than one hundred and fifty (150) members in the proposed class; (2) various members of the proposed class are citizens of states different from where Defendants are citizens; and (3) the amount in controversy, exclusive of interest and costs, exceeds $5,000,000.00 in the aggregate.

12.    In addition, this Court has supplemental jurisdiction over Plaintiffs' state claims under 28 U.S.C. § 1367 because those claims derive from a common nucleus of operative facts.

13.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiffs' and Class Members' claims occurred in the District of Minnesota as Defendants: (a) are authorized to conduct business in this District and have intentionally availed themselves of the laws within this District; (b) currently conduct substantial business in this District; and (c) are subject to personal jurisdiction in this District. CenturyLink conducts substantial business in the State of Minnesota, with offices and physical locations throughout Minnesota. Defendants conducted business with Plaintiffs, over the course of several years, and overcharged them in this District.  Plaintiffs reside within this District and dealt with Defendants in the manner described within this Complaint in this District. Minnesota has an overriding interest in protecting consumers and in prohibiting corporations from carrying out deceptive and misleading practices in Minnesota and through interstate commerce.

## BACKGROUND FACTS

14.    On June 14, 2017, former CenturyLink employee Heidi Heiser filed a whistleblower complaint in the Superior Court of Arizona for Maricopa County alleging that she was terminated for reporting to her supervisors and company's CEO regarding the unlawful

billing practices she observed and refused to take part in as a sales representative. *Heiser v. CenturyLink, Inc.*, No. CV2017-008928 (Maricopa Cty. Super. Ct.). Attached hereto as Exhibit A is a true and correct copy of Ms. Heiser's whistleblower complaint (hereinafter "*Heiser*" or "*Heiser* Complaint," incorporated by reference herein).

15.     As explained in the *Heiser* complaint, Defendants maintained an incentive program(s) for their employees and agents that provided financial incentives to charge customers for services they did not order and/or to overcharge customers for services they did order.  Rather than uphold its duty to act in good faith and to ensure that it carefully charged consumers only in the correct amounts, and for services that consumers authorized, Defendants shifted that burden to consumers and essentially dared them to locate the overcharges and then demand refunds.

16.     Fee generation is at the heart of Defendants' business model. At all relevant times, Defendants sought to maximize the number of services for which they could bill customers in the Class. Defendants had a financial incentive to employ and continue such incentive programs, as it increased their revenues and profits. At the same time, Defendants' employment of such incentive programs harmed and injured consumers financially as they paid the charges that were improperly imposed in order to keep their accounts current.

17.     Ms. Heiser's allegations of what she observed, and what the CenturyLink corporate culture encouraged, are consistent with the experiences of thousands of consumers who have been misled and charged wrongful fees by CenturyLink.

18.     A digital revolt against CenturyLink's fraud has been fomented by subscribers on social media and consumer watchdog websites.

19.    By way of example, the following consumer complaints are emblematic of CenturyLink's practices, as described in the *Heiser* complaint:





20.    These types of communications reporting overcharges and blaming consumers as opposed to CenturyLink taking responsibility for its billing practices and conduct, are similar to those posted online by other victims of Defendants' practices, demonstrating a pattern and practice of Defendants' violation of applicable consumer protection statutes, breach of customer contracts, and unjust enrichment at the expense of its customers.

21.    Rather than take care to ensure that they only billed consumers for amounts actually authorized and agreed to, as Defendants had a duty to do, Defendants have attempted to shift the burden to its customers to locate overcharges and then demand refunds within a short time frame. The amounts billed to each customer each month are relatively small (less than

$200) and therefore, Defendants know that certain customers will have little time to actively monitor, search for billing discrepancies, and immediately seek corrections when appropriate. Defendants have taken advantage of and exploited this dynamic. This type of catch-us-if-you-can policy is unfair, deceptive and misleading.  By way of example, an outraged subscriber posted the following communication on social media:



22.    When customers have posted their written communications, complaining of CenturyLink creating and billing for duplicate accounts, CenturyLink blamed the subscriber or implied that the subscriber was somehow under "fraud review."  For example, one subscriber posted  the  following communication regarding CenturyLink's duplicative billing:



23.    These types of communications reporting overcharges and blaming consumers as opposed to CenturyLink taking responsibility for its billing practices and conduct, are similar to those posted online by other victims of Defendants' practices, demonstrating a pattern and practice of Defendants' violation of applicable consumer protection statutes, breach of customer contracts, and unjust enrichment at the expense of its customers.

24.    Rather than take care to ensure that they only billed consumers for amounts actually authorized and agreed to, as Defendants had a duty to do, Defendants have attempted to shift the burden to its customers to locate overcharges and then demand refunds within a short

time frame. The amounts billed to each customer each month are relatively small (less than $200) and therefore, Defendants know that certain customers will have little time to actively monitor, search for billing discrepancies, and immediately seek corrections when appropriate. Defendants have taken advantage of and exploited this dynamic. This type of catch-us-if-you-can policy is unfair, deceptive and misleading.  By way of example, an outraged subscriber posted the following communication on social media:

25.    When customers have posted their written communications, complaining of CenturyLink creating and billing for duplicate accounts, CenturyLink blamed the subscriber or implied that the subscriber was somehow under "fraud review."  For example, one subscriber posted  the  following communication regarding CenturyLink's duplicative billing:

26.    These screenshots are not outliers. Attached hereto as Exhibit B is small sample of the thousands of pages of consumer complaints—primarily focused on fraudulent billing practices—lodged on Consumer Affairs' website.  Many consumers state that the only reason they rated CenturyLink with "one star" was that "zero stars" is not an option. *See, e.g.,* https://www.consumeraffairs.com/cell_phones/centurylink.html.

27.    Additionally, attached hereto as Exhibit C is a true and correct copy of a Reddit thread responding to recent reporting regarding Ms. Heiser's complaint from consumers and other former employees and technicians describing the conduct alleged herein. *See, e.g.,* https://www.reddit.com/r/news/comments/6hon4l/centurylink_is_accused_of_running_wells_fargolike/?st=J41YD4QQ&sh=5a66cd7a.

28.    Further, searching Twitter and Facebook with the word "CenturyLink" and any number of additional keywords—"scam," "fraud," "ripoff," and "bill"—demonstrates significant levels of discord, desperation, and demands from victims to remedy CenturyLink's

unlawful practices. A Google search of "CenturyLink Complaints" provides similar results.

29.    Upon information and belief, at least one State's Attorney General has investigated and entered into an "assurance of discontinuance" with CenturyLink which prohibits the conduct described herein. However, the conduct remains ongoing.

30.    The foregoing demonstrates that Defendants have been engaged in far more than the odd, unintentional mistake or rare miscommunication in their dealings with Plaintiffs and the Class. Rather, it demonstrates that Defendants acted intentionally to create a new profit center at the expense of unsuspecting customers who had placed their trust in Defendants to bill them accurately, honestly, and only pursue and withdraw from their bank accounts (many which were set up for electronic autopay deductions) for amounts actually due and agreed upon.

31.    Defendants had a duty to act honestly and in good faith towards Plaintiffs and the Class and to only bill and collect funds actually due and mutually agreed upon. In providing Plaintiffs access to auto-deduct funds from Plaintiffs' bank and financial accounts, Defendants owed Plaintiffs and the Class an additional duty not to help itself to excessive and unauthorized fees, or otherwise convert Plaintiffs' funds. Defendants breached this duty.

32.    The offending and unlawful conduct by CenturyLink, throughout the United States, including in Minnesota, includes, but is not limited to:

- Billing its customers for phone lines or service items never requested by the customer;

- Billing its customers higher rates than the rates quoted and agreed during sales calls;

- Billing its customers early termination fees when customers cancelled the services due to higher rates;

11

- Billing its customers when they cancelled their service upon learning the quality was not as represented;

- Billing its customers for periods of service before the service was connected, for products never received, and failing to credit consumers for these erroneous charges;

- Billing its customers for services and products that the consumer never requested without giving the consumer a credit for these charges;

- Failing to process its customers' service cancellation requests in a timely manner and billing them for the period of the time the service remained connected following the request for cancellation, without providing a credit for this time period;

- Charging its customers full price for leased modems that consumers returned to CenturyLink within the required timeframe, and then referring the consumers account to collections when the consumer refused to pay for the returned modem;

- Charging pro-rated charges without adding discounts on the price customers were quoted; and

- Collecting excessive and unauthorized funds from Class members beyond those mutually agreed to.

33.    Defendants' current and former employees have acknowledged the foregoing types of unlawful programs and activities and have reported the offenses to Defendants, yet Defendants have continued to employ its scheme to generate revenue.   This pattern demonstrates Defendants' intent and that any financial gains from such activities are not

inadvertent but intentional, fraudulently obtained through false pretenses, unearned, and ill-gotten.

34.     The types of practices described above affected Plaintiffs and members of the Class of other CenturyLink subscribers in Minnesota.

***Plaintiffs' Experience with CenturyLink***

35.     At all relevant times, Plaintiffs Victor and Pamela Romero were customers of CenturyLink and were overcharged for services by CenturyLink.

36.     In 2016, Plaintiffs contacted CenturyLink for internet services and were quoted and agreed to pay $29.95 per month.  Rather than honor the agreement, CenturyLink charged Plaintiffs $49.99 per month, ostensibly for a different internet service entirely, one which was not even provided in their area.

37.     CenturyLink also overcharged Plaintiffs for bundling services.  When Plaintiffs asked CenturyLink to bundle DirectTV television service with their internet service, CenturyLink quoted, and the parties agreed to, a price of approximately $130 per month. Instead, CenturyLink billed Plaintiffs $200 per month.

38.     Plaintiffs understood they were always billed for services one month in advance, and allowed CenturyLink to take any invoiced amounts out of their bank account.  However, when Plaintiffs finally terminated their services in May 2017, CenturyLink still invoiced them for that month.

39.     CenturyLink never refunded the amounts it wrongfully took from Plaintiffs' bank account.

40.     Based upon the allegations herein, CenturyLink's misconduct toward Plaintiffs was not merely an isolated incident, an accident, or some sort of technical glitch.  Rather,

Plaintiffs were swept up into Centurylink's scheme to systematically breach contracts and defraud consumers out of vast amounts of money by using deliberately false invoicing and collections practices. Defendants' conduct was calculated to cause confusion and deceive its customers who were in the same circumstances as Plaintiffs.

41. Once the Romero Plaintiffs realized the overcharges imposed on their account, they spent considerable time and inconvenience challenging Defendants about the overcharges. Despite Plaintiffs' complaints and efforts to have the excess charges reversed, Defendants continued to overcharge Plaintiffs. Unless Defendants are enjoined from continuing their misconduct, Plaintiffs and others similarly situated remain at risk of overcharges and threats of collections activity and damage to their credit due to Defendants' continued and ongoing maintenance of its scheme.

42. By reason of the foregoing, Plaintiffs have been damaged, injured, and incurred financial loss as a result of the common practices alleged.

### CLASS ACTION ALLEGATIONS

43. This action is brought, and may properly be maintained, as a class action under Fed. R. Civ. P. Rule 23 because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

44. The Class is defined as follows:

All persons in the state of Minnesota who contracted with Defendants for telephone, television, and/or internet service during the relevant Class Period" (referred to herein as the "Class").

45. The "Class Period" for the Class dates back to the length of the longest applicable statute of limitations for any claims asserted on behalf of that Class from the date this action was commenced and continues through the present and the date of judgment.

46.     Excluded from the Class are Defendants, their employees, co-conspirators, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated companies; the undersigned counsel for Plaintiffs and their employees; and the judge and court staff to whom this case is assigned.  Plaintiffs reserve the right to amend the definition of the class if discovery or further investigation reveals that the class should be expanded or otherwise modified.

47.     This action satisfies the predominance, commonality typicality, numerosity, superiority, adequacy, and all other requirements of Fed. R. Civ. P. Rules 23(a), 23(b)(2), and 23(b)(3).

(a) **Numerosity**: The Plaintiff Class is so numerous that the individual joinder of all members is impractical under the circumstances of this case.  While the exact number of Class Members is unknown to Plaintiffs at this time, Plaintiffs are informed and believe, and based thereon allege, that thousands of consumers have been victimized by CenturyLink's practices in Minnesota, in the manner described above.

(b) **Commonality**: Common questions of law and fact exist as to all members of the Plaintiff Class and predominate over any questions that affect only individual members of the Class.  The common questions of law and fact include, but are not limited to:

(i)     Whether Defendants maintained incentive programs which incentivized employees and agents to overcharge Class Members for services Class Members did not order or approve;

(ii)    Whether Defendants maintained a program of shifting responsibility to its customers to discover the overcharges they imposed, as opposed to billing and collecting service fees from consumers accurately and in good faith;

(iii)   Whether Defendants made misrepresentation or omissions of material fact about their telecommunications services, billings, and/or employee incentive programs;

(iv)    Whether Defendants breached any implied or explicit contractual obligations to subscribers or deceptively billed for services not being offered, contemplated, or agreed upon;

(v)     Whether Defendants breached the implied covenant of good faith and fair dealing made part of all contracts;

(vi)    Whether Defendants violated their duties to Plaintiffs and the Class;

(vii)   Whether Defendants should be required to conduct an equitable accounting and provide refunds; and

(viii)  Whether Defendants have been unjustly enriched.

(c) **Typicality**: Plaintiffs' claims are typical of the claims of the Class Members. Plaintiffs and the members of the Class sustained damages arising out of CenturyLink's common practices and wrongful and fraudulent conduct as alleged herein.

(d) **Adequacy**: Plaintiffs and the undersigned counsel will fairly and adequately protect the interests of the Class Members. Plaintiffs have no interests that are

adverse to the interests of the other Class Members and have hired counsel experienced in class actions, complex litigation and trial practice.

**(e) Superiority**: A class action is superior to other available means for the fair and efficient adjudication of this controversy. Because individual joinder of all members of the class is impractical, class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of effort and expense that numerous individual actions would engender. The expenses and burdens of individual litigation would make it difficult or impossible for individual members of the Class to redress the wrongs done to them, while important public interests will be served by addressing the matter as a class action. The cost to and burden on the court system of adjudication of individualized litigation would be substantial, and significantly more than the costs and burdens of a class action. Class litigation would also prevent the potential for inconsistent or contradictory judgments.

**(f) Public Policy Considerations**: When a company or individual engages in fraudulent and predatory conduct with large swaths of consumers, it is often difficult or impossible for the vast majority of those consumers to bring individual actions against the offending party.  Many consumers are either unaware that redress is available or unable to obtain counsel to obtain that redress for financial or other reasons.  Class actions provide the class members who are not named in the complaint with a vehicle to achieve vindication of their rights.  The members of this Class are so numerous that the joinder of all

members would be impractical and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the court. There is a well-defined community of interest in the questions of law or fact affecting the Plaintiff Class in that the legal questions of consumer fraud, breach of contract, and other causes of action, are common to the Class Members. The factual questions relating to CenturyLink's wrongful conduct and their ill-gotten gains are also common to the Class Members.

**(g) Risk of Continuing Harm**: The practices complained of are of an ongoing and continuing nature.  Most Class Members remain unaware of the practices complained of.  The risk of continuing and future harm from the practices complained of continues to exist, making injunctive, declaratory, and equitable relief appropriate and necessary.  Injunctive and declaratory relief barring Defendants' continuation of these practices and notice to the Class is appropriate and necessary.  Plaintiffs and the Class remain in the market for telephone, cable and/or internet services and have no means of discovering whether Defendant has ceased its misrepresentations and are thus, subject to continuing harm. Absent such relief, the amounts Defendants will improperly collect in the future will exceed that already collected.  Injunctive and declaratory relief is therefore, predominant.

## COUNT I
## VIOLATIONS OF THE MINNESOTA CONSUMER FRAUD ACT, MINN. STAT. §§ 325F.69, 8.31, Subd. 3a.

48.    Plaintiffs re-allege and incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

49.    As alleged in this Complaint, Defendants fraudulently conducted its advertising, billing and collections practices.

50.    Plaintiffs bring this action on behalf of themselves and on behalf of the Class against Defendants for violations of the Minnesota Consumer Fraud Act, Minn. Stat. § 325F.69.

51.    Minn. Stat. § 325F.69 subd. 1 provides:

The act, use, or employment by any person of fraud, false pretenses, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged, is enjoined as provided in section 325F.70.

52.    CenturyLink is considered a "person" under § 325F.68, Subd. 3 of the Consumer Fraud Act.

53.    CenturyLink's sale of goods and services related to internet, cable, and telephone is considered "merchandise" under § 325F.68, Subd. 2 of the Consumer Fraud Act.

54.    CenturyLink employed a pattern and practice of fraudulent conduct, misrepresentations, and material omissions of fact with regard to its services. CenturyLink charged Plaintiffs and the Class rates higher than initially quoted, including billing Plaintiffs and the Class for inapplicable fees, inappropriate services, and incorrectly bundled packages.

55.    CenturyLink implemented a scheme to lure Plaintiffs and the Class with the promise of low rates, but then charged higher than agreed-upon rates and inappropriate fees. Defendant relied on consumers passive payments auto-deducted through their bank accounts to keep its inappropriate fees and prices hidden. Additionally, CenturyLink kept the inappropriate charges billed to each customer each month to relatively small amounts (less than $200) knowing that certain customers will have little time to actively monitor and immediately seek corrections when appropriate. Defendants seek to exploit and take advantage of that dynamic.

56.    Class members need not affirmatively establish individual reliance on Defendant's affirmative misrepresentations to establish entitlement to damages flowing from a violation of the laws prosecutable under Minn. Stat. § 8.31, subd. 3a, including the Minnesota Consumer Fraud Act. Plaintiffs may demonstrate entitlement to class-wide damages by establishing a causal nexus between any conduct—violative of Minnesota Statutes, Sections 325F.69, 325D.13, and 325D.44 (collectively "consumer protection statutes")—and injury through circumstantial evidence not related to any particular Class member.  There is a causal nexus between Defendant's misrepresentations as to the monthly rate for its services which lured Plaintiffs and the Class into a relationship with Defendant whereby Defendant was permitted to implement its scheme of including inappropriate fees and other charges in Plaintiffs and the Class's monthly bills.  For all material omissions of information, causation is presumed.

57.    Plaintiffs and the Class lost money, were injured, and harmed by Defendants' deceptive, unconscionable, and/or unfair business practices in amounts to be determined at trial.

58.    As a result of the foregoing, Plaintiffs and the Class are entitled to injunctive and declaratory relief, among other things, compensatory damages, any statutory damages and penalties allowed by law, an accounting, and all other relief deemed just and equitable by the Court, including but not limited to reasonable attorneys' fees and costs, consistent with Minn. Stat. § 8.31, subd. 3a.

**COUNT II**
**VIOLATIONS OF THE MINNESOTA DECEPTIVE TRADE PRACTICES ACT,**
**MINN. STAT. §§ 325D.44, 8.31, subd. 3a.**

59.    Plaintiffs re-allege and incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

60.    Plaintiffs bring this action on behalf of themselves and on behalf of the Class against Defendants for violations of the Minnesota Deceptive Trade Practices Act, Minn. Stat. § 325D.44.

61.    This claim is based on Defendants' deceptive and misleading conduct and common omissions of material fact.

62.    The Minnesota Deceptive Trade Practices Act broadly prohibits deceptive and misleading practices.

63.    Minn. Stat. § 325D.44, subd. 1 provides:

A person engages in a deceptive trade practice when, in the course of business, vocation, or occupation, the person:

(5) represents that goods or services have . . . characteristics, . . . uses, [or] benefits . . . they do not have;

(7) represents that goods or services are of a particular standard, quality, or grade . . . if they are of another;

(8) advertises goods or services with the intent not to sell them as advertised;

(11) makes false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions.

64.    As alleged herein above, CenturyLink, through its employees and agents, has engaged in a pattern and practice of deceptive and misleading activity, and collection of monies by way of false pretenses.  Defendants engaged in deceptive, unconscionable, and/or unfair business practices by, among other things, causing the members of the Class to be enrolled in services they did not request or authorize, billing at higher rates than those quoted, billing for early termination fees, continuing to bill customers after they had canceled their accounts, adding charges, and requiring consumers to pay for previously undisclosed fees in connection with signing up for Defendants' services.  The amounts charged, collected, and auto-deducted

from bank accounts (or otherwise billed and collected) are material terms to CenturyLink customers. Deceptively overcharging consumers in a manner they are unlikely to detect within a short time period is a material misrepresentation or an omission of material fact to reasonable consumers in the Class. As explained in the *Heiser* complaint, the foregoing occurred and Class Members were injured because Defendants maintained an incentive program for their employees and agents which provided financial incentives to them to engage in such conduct.

65.     The practices described and complained of were likely to deceive a consumer acting reasonably in the same circumstances.

66.     Defendants acted with the intent that Plaintiffs and members of the Class rely on their concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise and therefore engaged in unlawful practices in violation of the Deceptive Trade Practices Act. The amounts billed to each customer each month are relatively small (less than $200) and therefore, Defendants know that certain customers will have little time to actively monitor and immediately seek corrections when appropriate. Defendants seek to exploit and take advantage of that dynamic.

67.     Plaintiffs and the Class lost money, were injured, and harmed by Defendants' deceptive, unconscionable, and/or unfair business practices in amounts to be determined at trial.

68.     The conduct described herein is continuing. The conduct was engaged in for profit, as a deliberate corporate policy, rather than as an isolated incident, was morally wrong, callous, and/or oppressive.

69.     As a result of the foregoing, Plaintiffs and the Class are entitled to injunctive and declaratory relief and all other relief deemed just and equitable by the Court, including but not limited to reasonable attorneys' fees and costs, consistent with Minn. Stat. § 8.31, subd. 3a.

**COUNT III**
**VIOLATIONS OF THE MINNESOTA UNLAWFUL TRADE PRACTICES ACT, MINN.**
**STAT. §§ 325D.13, 8.31 subd. 3a.**

70.    Plaintiffs re-allege and incorporate herein by reference each and every allegation
contained in the preceding paragraphs of this Complaint as though fully set forth herein.

71.    As alleged in this Complaint, CenturyLink committed unlawful, deceptive, and
fraudulent business acts and practices.

72.    Plaintiffs bring this action on behalf of themselves and on behalf of the Class
against Defendants for violations of the Minnesota Unlawful Trade Practices Act, Minn. Stat. §
325D.13.

73.    Minn. Stat. § 325D.13 provides:

No person shall, in connection with the sale of merchandise, knowingly
mispresent, directly or indirectly, the true quality . . . of such merchandise.

74.    CenturyLink is a "person" within the meaning of § 325D.10.

75.    CenturyLink, through its employees and agents, violated Minnesota's Unlawful
Trade Practices Act by unlawfully representing its billing and sales practices.  CenturyLink
frequently billed Plaintiffs and the Class at rates higher than those quoted, and similarly,
inappropriately billed Plaintiffs and the Class for unrequested services, inapplicable fees, and
incorrectly bundled services.  CenturyLink represented to Plaintiffs and the Class prices for its
goods and services, but then regularly charged higher rates than originally disclosed.

76.    Defendants acted with the intent that Plaintiffs and members of the Class rely on
their concealment, suppression, or omission, in connection with the sale or advertisement of any
merchandise and therefore engaged in unlawful practices in violation of the Deceptive Trade
Practices Act.  The amounts billed to each customer each month are relatively small (less than
$200) and therefore, Defendants know that certain customers will have little time to actively

monitor and immediately seek corrections when appropriate. Defendants seek to exploit and take advantage of that dynamic.

77. As a result of the foregoing, Plaintiffs and the Class are entitled to injunctive and declaratory relief, among other things, compensatory damages, any statutory damages and penalties allowed by law, an accounting, and all other relief deemed just and equitable by the Court, including but not limited to reasonable attorneys' fees and costs, consistent with Minn. Stat. § 8.31, subd. 3a.

## COUNT IV
## BREACH OF CONTRACT

78. Plaintiffs re-allege and incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

79. Plaintiffs and each member of the Class entered into contracts with Defendants for the provision of telephone, internet, television, and/or other services at certain costs. Plaintiffs performed under the contracts.

80. As explained above, Defendants maintained an incentive program(s) for their employees and agents that provided financial incentives to them to charge customers for services consumers in the Class did not order and/or to overcharge those consumers for services they did order.

81. Defendants overcharged Plaintiffs and members of the Class in breach of their contracts.

82. Plaintiffs and Class Members were charged for services for which they did not agree to pay for, or for services they agreed but in amounts which they did not agree to pay.

83. Plaintiffs and the Class were injured, harmed, and incurred financial loss by way of Defendants' conduct in amounts to be determined at trial.

84.    As a result of the foregoing, Plaintiffs and the Class are entitled to, among other things, compensatory damages, an accounting, and all other relief deemed just and equitable by the Court.

## COUNT V
## BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

85.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

86.    Implied in every contract is a duty of good faith and fair dealing.

87.    Defendants had a duty to treat Plaintiffs fairly, and to accurately bill, collect, and account for funds mutually agreed upon.  In providing Plaintiffs access to auto-deduct funds from Plaintiffs' and Class Members' bank and financial accounts, Defendants owed Plaintiffs and the Class an additional duty not to help itself to excessive and unauthorized fees, or otherwise convert Plaintiffs' funds.

88.    By its actions herein, Defendants breached that duty and did not act fairly or in good faith.

89.    Plaintiffs and the Class were injured, harmed, and incurred financial loss by way of Defendants' conduct in amounts to be determined at trial.

90.    As a result of the foregoing, Plaintiffs and the Class are entitled to, among other things, compensatory damages, an accounting, and all other relief deemed just and equitable by the Court.

## COUNT VI
## ACCOUNTING

91.    Plaintiffs re-allege and incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

92.    Defendants had a duty to accurately charge, collect, and deduct from Plaintiffs' bank/financial accounts only those amounts mutually agreed to.

93.    As explained above, Defendants maintained an incentive program(s) for their employees and agents which provided financial incentives to charge customers for services they did not order and/or to overcharge consumers for services they did order.

94.    As a result, Defendants maintained a system of overcharging and collecting from Plaintiffs and the other members of the Class monies which they did not agree to pay.

95.    As a result of the foregoing, Defendants have received money, a portion of which is due to Plaintiffs and the Class.

96.    The amount of money due from Defendants to Plaintiffs and the Class is currently unknown to Plaintiffs and cannot be ascertained without an accounting of the receipts and disbursements of the Class' transactions and accounts with Defendants. Plaintiffs, on behalf of the Class, therefore demand an accounting of the aforementioned transactions from Defendants and payment of the amount found due which Defendants have failed and refused—and continues to fail and refuse—to pay such sum.  Such accounting should be conducted at Defendants' cost and expense.

97.    Defendants maintained sole custody and control of their accounts and billing systems. Defendants also had exclusive access to the internal incentive programs offered to their agents and employees. Many Class Members agreed to have Defendants auto-deduct payments from their bank accounts, placing trust in Defendants to only bill them and collect amounts that they actually agreed to pay and in good faith.  By way of the foregoing, Defendants have had a special relationship with Plaintiffs and the Class and a duty to account accurately for the amounts charged and collected for services performed and provided.

98.    Defendants failed to bill and collect sums from Plaintiffs and the Class consistent with their agreements. Plaintiffs and the Class trusted and relied on Defendants to bill them accurately and only collect amounts properly due.   Many Class Members unsuspectingly provided Defendants authorization for automatic payments and withdrawals. As shown above and in the attached exhibits, there is a widespread history with overbilling and inaccurate collections by Defendants which requires review and oversight.

99.    An accounting and audit is necessary. A balance due from the Defendants to Plaintiffs and the Class can only be ascertained through such an accounting.

100.    Given Defendants' superior knowledge and access to records, as well as their duty to only bill and collect monies in good faith, Defendants are in the superior and exclusive position to confirm the accuracy of their accounts and collections from Class Members and provide refunds.

101.    Defendants should be ordered to provide an accounting of each Class Member's account (along with appropriate supervision), to ensure that they have not been overcharged. To the extent they have been overcharged (as with Plaintiffs), Defendants should be ordered to immediately refund the difference with interest, along with all other relief found just and equitable, including but not limited to reasonable attorneys' fees and costs.

**COUNT VII**
**UNJUST ENRICHMENT**

102.    Plaintiffs re-allege and incorporate herein by reference each all preceding paragraphs as though fully set forth herein.

103.    As a result of Defendants' unlawful and deceptive practices described above, Defendants have been unjustly enriched in retaining revenues derived from Plaintiffs' and Class Members' payments for Defendants' services. Retention of that revenue under these

circumstances is unjust and inequitable because Defendants used illegal, deceptive, and unfair business practices to induce or force customers to open, purchase, and/or maintain services and products and/or billed them for services not requested or provided.

104.   Because Defendants' retention of the non-gratuitous benefits conferred on it by Plaintiffs and Class Members is unjust and inequitable, Defendants must pay restitution to Plaintiffs and members of the Class for its unjust enrichment, along with all other relief found just and equitable in the premises, including reasonable attorneys' fees and costs.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on their own behalf and on behalf of the Class Members, pray for relief as follows:

1.   For an order certifying the proposed Class pursuant to Fed. R. Civ. P. Rules 23(a), 23(b)(2), and/or 23(b)(3);

2.   That Plaintiffs be appointed as the representatives of the Class; and

3.   That Plaintiffs' counsel be appointed as Class Counsel.

4.   For an order finding in favor of Plaintiffs and the Class Members on all counts asserted herein;

5.   For an order declaring that Defendants' conduct violates the statutes and other legal counts referenced herein;

6.   For all actual, consequential, statutory, and incidental losses and damages, according to proof;

7.   For appropriate injunctive relief, including an order prohibiting continuation of the practices complained of;

9.   For reasonable attorneys' fees and costs, as permitted by law;

10.    For prejudgment interest on all amounts awarded;

11.    For corrective notice to any credit reporting agencies;

12.    For costs of suit herein incurred; and

13.    For such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury.

Dated:  July 12, 2017                Respectfully submitted,

By:    *s/ Brian C. Gudmundson*
       **ZIMMERMAN REED LLP**
       Brian C. Gudmundson MN 336695
       Carolyn G. Anderson MN 0275712
       1100 IDS Center
       80 South 8th Street
       Minneapolis, MN 55402
       Telephone: (612) 341-0400
       Email: brian.gudmundson@zimmreed.com
       Email: carolyn.anderson@zimmreed.com

       **ZIMMERMAN REED LLP**
       Hart L. Robinovitch MN 240515
       14646 North Kierland Blvd., Suite 145
       Scottsdale, Arizona  85254
       Telephone: (480) 348-6400
       Email: hart.robinovitch@zimmreed.com

       **GERAGOS & GERAGOS, P.C.**
       Mark J. Geragos (*pro hac vice* to be filed)
       Ben J. Meiselas (*pro hac vice* to be filed)
       Historic Engine Co. No. 28
       644 South Figueroa Street
       Los Angeles, California 90017-3411
       Telephone: (213) 625-3900
       Email: Geragos@Geragos.com

       *Attorneys for Plaintiffs and the Class*