# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

IN RE: CENTURYLINK SALES
PRACTICES AND SECURITIES
LITIGATION

MDL No. 17-2795 (MJD/KMM)

This Document Relates to
Civil File Nos. 17-2832, 17-4613,
17-4614, 17-4615, 17-4616, 17-4617,
17-4618, 17-4619, 17-4622, 17-4943,
17-4944, 17-4945, 17-4947, 17-5046,
18-1562, 18-1565, 18-1572, 18-1573,

**MEMORANDUM OF LAW & ORDER**

Carolyn G. Anderson, Brian C. Gudmundson, Bryce D. Riddle, and Hart L.
Robinovitch, Zimmerman Reed LLP, Plaintiffs' Interim Co- Lead and Liaison
Counsel; Mark M. O'Mara, Alyssa J. Flood, Channa Lloyd, and Caitlin Reese,
O'Mara Law Group, and Mark J. Geragos, Benjamin J. Meiselas, and Lori G.
Feldman, Geragos & Geragos, APC, Plaintiffs' Interim Co-Lead Counsel;
Daniel C. Hedlund and Michelle J. Looby, Gustafson Gluek PLLC, Plaintiffs'
Executive Committee Chair; Richard M. Hagstrom, Anne T. Regan, Nicholas S.
Kuhlmann, and Jason Raether, Hellmuth & Johnson, PLLC, Roxanne Barton
Conlin, Roxanne Conlin & Associates, PC, and Francois M. Blaudeau, W. Lewis
Garrison, Jr., Christopher B. Hood, and James F. McDonough, III, Heninger
Garrison Davis, LLC, Plaintiffs' Executive Committee; and T. Ryan Langley,
Hodge & Langley Law Firm, P.C., Michael Fuller, Olsen Daines PC, Brandon C.
Fernald, Fernald Law Group LLP, Bonner C. Walsh, Walsh PLLC, Alfred M.
Sanchez, and Orin Kurtz, Gardy & Notis, LLP, Counsel for Plaintiffs and the
Proposed Class.

Douglas P. Lobel, David A. Vogel, and Jeffrey M. Gutkin, Cooley LLP; Carolyn J.
Fairless, Michael T. Williams, Andrew Unthank, and Theresa Wardon Benz,

Wheeler Trigg O'Donnell LLP; and William A. McNab and David M. Aafedt, Winthrop & Weinstine, P.A., and Jerry W. Blackwell, Blackwell Burke P.A., Counsel for Defendant CenturyLink, Inc. and the Proposed Intervenors.

Warren D. Postman and Ashley C. Keller, Keller Lenkner LLC, and Jared D. Shepherd, Hoff Barry, P.A., Counsel for Movants Edwin Miller, Vonita Taylor, and Patrick West.

---

## I. INTRODUCTION

This matter is before the Court on Movants Edwin Miller, Vonita Taylor, and Patrick West's Motion for Stay Pending Appeal [Docket No. 554] and Motion for Leave to File Reply Brief [Docket No. 564]. The Court heard oral argument on February 20, 2020. For the reasons that follow, Movants' motion for a stay pending appeal is denied.

## II. BACKGROUND

### A. Procedural History of Settlement of the Consumer MDL

On October 16, 2019, Plaintiffs moved for an Order (1) granting Preliminary Approval of the Settlement; (2) provisionally certifying the proposed Settlement Class; (3) conditionally appointing the proposed Class Representatives as the Settlement Class Representatives; (4) conditionally appointing the proposed Class Counsel as the Settlement Class Counsel; (5) approving the form and manner of notice, (6) ordering that notice be

disseminated to the Settlement Class; (7) establishing the deadlines for Settlement Class Members to request exclusion from the Settlement Class, file objections to the Settlement, or file Claims for a Settlement Award; and 8) setting the proposed schedule for completion of further settlement proceedings, including scheduling the final fairness hearing.  [Docket No. 466]  With that motion, Plaintiffs filed a Proposed Order, which included a preliminary injunction against the Releasing Parties from participating in, among other things, arbitration relating to the Released Claims.  ([Docket No. 474] Proposed Order ¶ 10.)  Defendant CenturyLink, Inc. and the Proposed Intervenors ("CenturyLink") filed a brief in support of Plaintiffs' motion.  [Docket No. 481]

On January 10, 2020, CenturyLink also filed a Supplemental Brief in support of the motion for preliminary approval addressing Plaintiffs' request that the Court's Preliminary Approval Order contain a temporary injunction of all parallel proceedings, including arbitrations, by putative class members. [Docket No. 508]  CenturyLink specifically addressed the individual consumer arbitrations brought against CenturyLink by clients of the law firms of Keller Lenkner LLC ("Keller") and Troxel Law LLP ("Troxel").  It represented that it

would serve Keller and the American Arbitration Association ("AAA") with a copy of its brief on January 10, 2020.  (<u>Id.</u> at 3 n.3.)

On January 22, 2020, the Court held a hearing regarding the motion for preliminary approval of the settlement.  [Docket No. 524]  None of Keller's clients appeared at the hearing; nor did they file any document in the MDL.

On January 24, 2020, the Court issued the Preliminary Approval Order, which included the following language, as requested by Plaintiffs and CenturyLink:

> **10. Injunction against Releasing Parties' Pursuit of Released Claims.**  Pending the Final Approval Hearing and issuance of the Final Approval Order and Final Judgment, Releasing Parties are hereby enjoined from filing, commencing, prosecuting, maintaining, intervening in, participating in (as class members or otherwise), or receiving any benefits from any class action or other lawsuit, arbitration, or administrative, regulatory, or other proceeding in any jurisdiction based on or relating to the Released Claims.  The Court finds that issuance of this preliminary injunction is necessary and appropriate in aid of the Court's jurisdiction over this action.  The Court finds no bond is necessary for issuance of this injunction.

([Docket No. 528] Preliminary Approval Order ¶ 10.)

"Releasing Party" is defined as "The Settlement Class Representatives, all Settlement Class Members, and their respective heirs, executors, administrators,

representatives, agents, lawyers, partners, successors, and assigns." ([Docket No. 469] Gudmundson Decl., Ex. A, Settlement Agreement § 1.35.)

## B. Arbitration Actions Brought by Keller's Clients

In 2019, Keller began advertising through Facebook and other websites to recruit arbitration claimants against CenturyLink. ([Docket No. 513] Unthank Decl. ¶¶ 15, 19-21; Unthank Decl., Exs. C-D.) Keller claims that more than 22,000 CenturyLink customers have engaged its services to bring individual arbitration claims against CenturyLink. (Unthank Decl. ¶ 51.)

### a) Keller's Interactions with CenturyLink

On May 14, 2019, Keller sent a letter to CenturyLink on behalf of "[m]ore than 9,000" clients who had retained Keller to pursue arbitration claims against CenturyLink. (Unthank Decl. ¶ 30; Unthank Decl., Ex. H.) Two weeks later, Keller sent a letter to CenturyLink identifying "nearly 3,000 additional" claimants. (Unthank Decl. ¶ 35; Unthank Decl., Ex. I.)

On June 12, 2019, CenturyLink requested that Keller provide certain information about the claims that CenturyLink claims to need in order to evaluate and resolve each claim before proceeding to arbitration, as required by the arbitration contracts. (Unthank Decl. ¶ 38; Unthank Decl., Ex. J.) Keller

would not provide information such as account numbers, descriptions of individual claims, or the amount of actual damages sought be each claimant. (Id. ¶¶ 38-39.) Keller did provide clients' names, "current physical addresses, email addresses, and phone numbers." (Id. ¶ 39; Unthank Decl., Ex. K.) Keller stated that it would not spend "15 minutes" to discuss each claim "on an individual basis" with CenturyLink because "such a pre-demand 'dialogue' would consume more than 3,500 hours." (Unthank Decl. ¶ 40; Unthank Decl., Ex. K at 2.)

CenturyLink asserts that its initial review of Keller's clients' claims raised concerns and a need for more information. (Unthank Decl. ¶¶ 42-44.) For example, CenturyLink could not identify any potential customer account that could be connected with some of Keller's clients; some clients claimed to receive services at addresses in states in which CenturyLink does not provide services; and some clients owed money to CenturyLink and could be subject to counterclaims. (Id. ¶ 44; Unthank Decl., Ex. L.)

Keller discussed the proposed MDL class settlement terms with CenturyLink's counsel in August 2019. (Unthank Decl. ¶ 12; Unthank Decl., Ex. M at 3.)

Keller continued to solicit clients after learning of the proposed class settlement in this MDL.  (Unthank Decl. ¶ 21; Unthank Decl., Ex. M at 3.)  On September 24, 2019, Keller informed CenturyLink that it had acquired "8,293 additional . . . clients," for a total of more than 22,000 clients.  (Unthank Decl. ¶ 51; Unthank Decl., Ex. N.)

On October 8, 2019, CenturyLink informed Keller that it would soon be proposing a class settlement in this MDL.  (Unthank Decl., Ex. O at 4.)  On October 16, 209, Plaintiffs filed their Motion for Preliminary Approval of Class Action Settlement and Provisional Class Certification.  [Docket No. 466]

### b)      Arbitrations Filed by Keller's Clients

On November 21, 2019, Keller submitted 1,000 simultaneous arbitration demands against CenturyLink to the AAA on behalf of a subset of its 22,000 CenturyLink claimant clients.  (Unthank Decl. ¶ 56; Unthank Decl., Ex. R.)  These arbitration demands included information such as each claimant's account number, a description of the alleged billing error, and a statement of actual damages.  (Unthank Decl. ¶ 57; Unthank Decl., Ex. S.)

Movants Edwin Miller, Vonita Taylor, and Patrick West ("Movants") were not included among these 1,000 arbitration claimants.  ([Docket No. 561] Sun

Decl. ¶ 8.)  Taylor and West were listed on a list of Keller's clients provided to CenturyLink as of September 24, 2019.  (Sun Decl. ¶¶ 5-7.)  Miller did not appear on any such list.  (Id. ¶ 7.)  To date, no Movant has filed any arbitration against CenturyLink.  ([Docket No. 562] Barnes Decl. ¶¶ 4-5; Sun Decl. ¶ 8.)

On December 12, 2019, CenturyLink and Keller participated in a conference call with the AAA regarding Keller's first 1,000 arbitration demands.  (Unthank Decl. ¶¶ 63-65.)  During that call, CenturyLink orally informed Keller that Plaintiffs and CenturyLink were requesting a temporary injunction of all arbitrations, including Keller's arbitrations, through the Motion for Preliminary Approval that had been filed on October 16.  (Id.)

On December 13, 2019, CenturyLink provided Keller and the AAA with copies of Plaintiffs' Motion for Preliminary Approval and the proposed Preliminary Approval Order and requested that the AAA stay the arbitrations pending this Court's preliminary review of the proposed class settlement.  (Unthank Decl. ¶ 66; Unthank Decl., Ex. W.)  The letter informed Keller and the AAA that this Court would hold the Preliminary Approval Hearing on January 22, 2020, during which the Court would consider the request for a preliminary injunction against Keller's clients' arbitration claims.  (Unthank Decl., Ex. W.)

On December 27, 2019, Keller informed the AAA that it objected to a stay of the arbitrations and argued that, if CenturyLink wished to stay the arbitrations, CenturyLink should seek judicial intervention targeting Keller's clients' arbitrations.  (Unthank Decl. ¶ 67; Sun Decl., Ex. A at 2-3.)

On January 9, 2020, the AAA ruled that it will not stay the arbitrations until all arbitration filing fees are paid by Keller and CenturyLink.  (Unthank Decl. ¶ 68; Unthank Decl., Ex. X.)

On January 10, 2020, CenturyLink filed a Supplemental Brief in this case to inform the Court of its arguments in favor of enjoining Keller's clients' parallel arbitrations.  [Docket Nos. 508-09]  On that same date, CenturyLink emailed Keller with copies of the Supplemental Brief and the supporting declarations and exhibits.  (Sun Decl. ¶ 11; Sun Decl., Ex. B.)  Keller did not respond to the Supplemental Brief; nor did Keller or Movants appear at the preliminary approval hearing.

### C.    Movants' Motion to Stay

On February 7, 2020, Movants filed a Notice of Appeal from the Preliminary Approval Order.  [Docket No. 534]  Movants represented that they are members of the provisionally certified class and appealed the order

temporarily enjoining them from pursuing their claims against CenturyLink in arbitration.

On February 10, Movants filed a Motion to Stay Pending Appeal, which was refiled on February 12.  [Docket No. 554]

Each Movant filed a declaration stating:

> I want to arbitrate my claims against CenturyLink on an individual basis, as is my right under my contract with CenturyLink and the Federal Arbitration Act.  I have no desire to pursue litigation against CenturyLink in court and I do not want to participate in any class-action lawsuit or settlement against CenturyLink.
>
> * * *
>
> I want to arbitrate my claims with CenturyLink immediately without any further delay.

([Docket No. 539] Miller Decl. ¶¶ 3-4; [Docket No. 540] Taylor Decl. ¶¶ 3-4; [Docket No. 542] West Decl. ¶¶ 3-4.)  They each aver: "I do not wish to participate in the settlement or in any class-action lawsuit against CenturyLink."

(Id. ¶ 7.)

## III.    DISCUSSION

### A.    Standard for Stay Pending Appeal

When deciding whether to issue a stay pending appeal, the Court considers:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

Hilton v. Braunskill, 481 U.S. 770, 776 (1987).  The Court must "consider the relative strength of the four factors, 'balancing them all.'"  Brady v. Nat'l Football League, 640 F.3d 785, 789 (8th Cir. 2011) (citations omitted).  "The most important factor is the appellant's likelihood of success on the merits.  The movant must show that it will suffer irreparable injury unless a stay is granted."  Id. (citations omitted).

**B.    Likelihood of Success on the Merits**

Movants assert that the Court's preliminary injunction against class members pursuing the Released Claims, found in paragraph 10 of the Preliminary Approval Order, violates the Federal Arbitration Act ("FAA") and the Due Process Clause of the United States Constitution.

**1.    Federal Arbitration Act**

**a)    Court's Authority to Temporarily Enjoin Class Members under the All Writs Act**

The All Writs Act provides:

The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

28 U.S.C. § 1651(a).

The power conferred by the [All Writs] Act extends, under appropriate circumstances, to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice, and encompasses even those who have not taken any affirmative action to hinder justice.

United States v. N.Y. Tel. Co., 434 U.S. 159, 174 (1977) (citations omitted).

"Even before a federal judgment is reached [] the preservation of the federal court's jurisdiction or authority over an ongoing matter may justify an injunction. . . ."  In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.), 770 F.2d 328, 335 (2d Cir. 1985) (cited with approval in In re Piper Funds, Inc., Institutional Gov't Income Portfolio Litig., 71 F.3d 298, 300 n.2 (8th Cir. 1995)).

Under certain circumstances, the Court has authority under the All Writs Act to temporarily enjoin class members from pursuing parallel litigation during the notice and opt-out period in a complex class action.  See, e.g., Liles v. Del Campo, 350 F.3d 742, 746–47 (8th Cir. 2003) (holding that a district court "acted within its discretion in issuing the injunction because enjoining related litigation

was necessary to ensure the enforceability of the order approving the preliminary settlement and to prevent further draining of the limited settlement fund"); In re Piper Funds, Inc., Institutional Gov't Income Portfolio Litig., 71 F.3d 298, 300 n.2 (8th Cir. 1995) ("We agree with the district court that it has the power, under Fed. R. Civ. P. 23 augmented by the All Writs Act, to control conduct by absent class members that affects management or disposition of the class action.") (citing In re Baldwin–United Corp., 770 F.2d at 335–38).

> In cases such as this, where parties to complex, multidistrict litigation have reached a settlement agreement after lengthy, protracted, and difficult negotiations—parallel proceedings can " 'seriously impair the federal court's flexibility and authority' to approve settlements in the multi-district litigation" and threaten to "destroy the utility of the multidistrict forum otherwise ideally suited to resolving such broad claims."

In re Uponor, Inc., F1807 Plumbing Fittings Prod. Liab. Litig., No. 11-MD-2247 ADM/JJK, 2012 WL 13065005, at *9 (D. Minn. Jan. 19, 2012) (quoting In re Baldwin–United, 770 F.2d at 337).  See also, e.g., Busch v. Bluestem Brands, Inc., No. 16-CV-0644 (WMW/HB), 2019 WL 1976147, at *3 (D. Minn. May 3, 2019) (pending final approval of the settlement, temporarily enjoining arbitration of released claims by settlement class members until they opt out).

Before the Court is a complex, multi-district action involving a Settlement Class of more than 17 million consumers spread across dozens of states that was settled after substantial motion practice, extended negotiations, and extensive confirmatory discovery. The Court found that a temporary injunction of parallel proceedings by the parties to this lawsuit was necessary to properly manage the disposition of this case and enforce the Court's Preliminary Approval Order, including avoiding confusion among class members, ensuring proper notice, and preserving resources. The Court's Order set forth an orderly, efficient manner for class members to opt out and, thus, pursue parallel actions, including lawsuits and arbitrations, with little delay. The Court's chosen process was carefully crafted considering the practicality of efficiently managing a class of more than 17 million consumers and, thus, the possibility of millions of opt-out requests.

### b) The FAA and the Federal Rules of Civil Procedure

Movants note that the All Writs Act only allows injunctions that are "agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The FAA provides that agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the

revocation of any contract." 9 U.S.C. § 2. Movants argue that, by temporarily enjoining them from arbitrating their claims against CenturyLink, the Court has rendered their arbitration agreement unenforceable in violation of the FAA. In particular, Movants assert that the injunction conflicts with the Eighth Circuit's holding in In re Piper Funds, Inc., Institutional Government Income Portfolio Litigation, 71 F.3d 298, 300 (8th Cir. 1995).

In Piper Funds, a class action securities MDL was pending before the district court when a putative class member, Park Nicollet Medical Foundation ("Park Nicollet"), filed a demand for arbitration against the defendants with the National Association of Securities Dealers ("NASD") in January 1995. 71 F.3d at 299-300. Park Nicollet was an investor with a $4.5 million claim against the defendants. Id. In its arbitration demand, as required by NASD rules, Park Nicollet declared that it elected not to participate in pending putative class actions. Id. at 300. A month later, the defendants and the class action plaintiffs tentatively settled the class actions. Id. In March 1995, Park Nicollet informed the district court that it had "1) chosen to have its dispute with [the defendants] resolved in arbitration, 2) decided not to participate in the putative class actions, and 3) irrevocably opted out of the putative class actions." Id. The next day,

March 3, the district court entered an order conditionally certifying the settlement class and enjoining arbitration by any class member until after the court distributed class notice and ruled on requests to opt out of the class.  Id. "[T]he district court agreed that Park Nicollet ha[d] a right to arbitrate but enjoined it from pursuing that remedy."  Id. at 302.  "Park Nicollet moved to vacate the March 3 Order, and to stay the class actions pending arbitration pursuant to § 3 of the FAA."  Id. at 300.  The district court denied the motion and Park Nicollet appealed.  Id.

The Eighth Circuit reversed.  First, it reasoned, "Park Nicollet has a contractual right to immediate submission of its securities law claims to arbitration."  Id. at 303 (citations omitted).  Second, "Park Nicollet's contractual and statutory right to arbitrate may not be sacrificed on the altar of efficient class action management."  Id.  Third, the Eighth Circuit did "not accept the class action parties' conclusory assertion that immediate arbitration by Park Nicollet (and perhaps others) will frustrate their class action settlement."  Id.  It reasoned that "it may even assist the settlement process to have arbitration opt outs identified before the final hearing on settlement approval."  Id.  The Eighth

Circuit concluded that the district court had violated the FAA by enjoining Park Nicollet from arbitrating its claim.  Id.

The Eighth Circuit further held that the district court had erred in denying Park Nicollet's request to opt out.  The Eighth Circuit noted that, generally, it had "no quarrel with the usual practice of not allowing class members to opt out until after the formal Rule 23(c)(2) notice to the class."  Id. at 304.  "However, the usual practice [wa]s not appropriate in this case . . . when a class member with an immediate right to arbitrate its claim seeks to opt out."  Id.  Park Nicollet had "made an unrefuted showing" of four critical facts:

> it (i) was represented by separate counsel; (ii) had a contractual right to arbitrate any claim encompassed by the class action; (iii) had submitted a claim to the NASD along with a declaration under § 12(d)(2) of the NASD Code that it elected not to participate in the class action; and (iv) now elected irrevocably to opt out of the class action.

Id.  Based on these undisputed facts, the Eighth Circuit held that, under the FAA, the district court was required to take one of three actions:

> it could stay the class action while Park Nicollet's claim is arbitrated; it could deny the request to opt out (for example, because Park Nicollet's arbitration claim is not arbitrable or its request to opt out was too late); or it could grant the request to opt out, in which case Park Nicollet's motion to stay the class action becomes moot.

Id.  Because the district court did none of those, the Eighth Circuit reversed the

district court's orders "insofar as (and only insofar as) they affect Park Nicollet,"

ordered the defendants to arbitrate Park Nicollet's claim, and granted Park

Nicollet's request to be excluded from the class.  Id. at 304.

The Court concludes that, here, the Preliminary Approval Order did not

run afoul of the Eighth Circuit's holding in Piper Funds, and that Movants are

unlikely to succeed on their claim on appeal that the Court's preliminary

injunction violated the FAA.

Generally, Piper Funds does not stand for the proposition that a settlement

class member cannot be temporarily enjoined from arbitration during the notice

and opt-out period.  In Piper Funds, the Eighth Circuit did not reverse the

preliminary approval order generally; nor did it alter the temporary injunction as

applied to all other class members.  Rather, the appellate court narrowly allowed

Park Nicollet to opt out and pursue its arbitration, while leaving the temporary

injunction and preliminary approval in place as to the rest of the class.

In this case, Movants have submitted no evidence that they have "a

contractual right to arbitrate any claim encompassed by the class action."  Piper

Funds, 71 F.3d at 304.  Nor have they shown "a contractual right to immediate

submission" of their claims to arbitration.  Cf. id. at 303.  No Movant has

presented any evidence of an arbitration agreement that applies to any services

they may have purchased.  Keller has refused to provide basic information about

the Movants' claims, depriving CenturyLink of the opportunity to evaluate and

resolve the claims before arbitration or determine if an arbitration agreement

applies.  Moreover, the evidence in the record shows that Movants have not, in

fact, filed any arbitration claims against CenturyLink.  This Court did not

"agree[] that [Movants] ha[ve] a right to arbitrate but enjoined [them] from

pursuing that remedy."  Cf. id. at 302.  Unlike Park Nicollet, Movants have failed

to show that their claims are arbitrable, and the FAA does not render the

preliminary injunction erroneous.  Cf. Piper Funds, 71 F.3d at 303-04.

Additionally, unlike in Piper Funds, Movants have not elected to

"irrevocably" opt out of the class action.  Cf. Piper Funds, 71 F.3d at 300, 304.  In

Movants' Reply, they state that "the movants are not attempting to opt out of the

proposed class."  ([Docket No. 565] Reply at 3.)  During oral argument, Movants

represented that **if the Court's preliminary injunction is lifted**, they will opt

out.  Thus, it is clear that, as of today, Movants have not attempted to opt out and

do not seek to opt out.  Piper Funds does not stand for the proposition that class

members can choose to remain in a class and reap the benefits of a settlement, while simultaneously pursuing arbitration against the same defendant for the same claims, particularly when those class members have offered no evidence whatsoever that they have a right to arbitrate their claims.

## 2. Due Process Clause

Movants further assert that the Court's preliminary injunction must be reversed because their due process rights were violated by entry of an order purporting to enjoin them without providing notice and an opportunity to be heard. The Court finds no merit to this argument.

The Due Process Clause requires notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 272 (2010). "[A]ctual notice . . . more than satisfie[s] [a movant's] due process rights." Id. See also Lind v. Midland Funding, L.L.C., 688 F.3d 402, 406 (8th Cir. 2012) ("[A] person cannot complain about the constitutionality of the method used to provide notice when he or she has received actual notice (assuming it is timely), for he or she has suffered no harm.") (citation omitted).

Here, Movants had actual notice of the motion for preliminary approval, including the request for the preliminary injunction, and of the hearing. CenturyLink informed Movants' counsel of the impending class settlement multiple times, provided them with Plaintiffs' motion for preliminary approval, emailed them copies of CenturyLink's Supplemental Brief, which focused solely on the request to enjoin the arbitrations by Keller's clients, and informed them of the January 22 hearing date, all before the January 22, 2020 hearing. See In re Land, 215 B.R. 398, 404 (B.A.P. 8th Cir. 1997) (imputing attorney's knowledge of bankruptcy filing to client); see also Restatement (Second) of Agency § 276 (1958) (Oct. 2019 Update) ("'Except for knowledge acquired confidentially, the time, place, or manner in which knowledge is acquired by a servant or other agent is immaterial in determining the liability of his principal because of it.'"). Movants made the strategic decision to not file any opposition, seek to intervene, or appear at the hearing. No due process violation occurred.

Because Movants received actual notice and the opportunity to be heard, the Court need not reach the parties' alternative arguments regarding representation by Class Counsel as members of a duly certified Federal Rule of Civil Procedure 23 settlement class. However, the Court notes that "[i]t is

familiar doctrine of the federal courts that members of a class not present as parties to the litigation may be bound by the judgment where they are in fact adequately represented by parties who are present, or where they actually participate in the conduct of the litigation in which members of the class are present as parties[.]" <u>Hansberry v. Lee</u>, 311 U.S. 32, 42-43 (1940).

### C.     Irreparable Harm to the Movants

Movants bear the burden of showing that the irreparable "harm is certain and great and of such imminence that there is a clear and present need for equitable relief." <u>Iowa Utilities Board v. FCC</u>, 109 F.3d 418, 425 (8th Cir. 1996). Movants have failed to show that they will suffer irreparable harm absent a stay. First, Movants cannot show a violation of their constitutional rights; nor can they show a violation of their right to arbitrate under the FAA. Second, if Movants do have a right to arbitrate, they can vindicate that right by opting out of the Settlement Class. Third, although Movants have submitted three declarations in which they state that they "want to arbitrate [their] claims with CenturyLink immediately without any further delay," they have, in fact, made no attempt to arbitrate their claims. Fourth, although Movants were notified of the specifics of the Motion for Preliminary Approval more than a month before the hearing, they made no attempt to oppose the Motion for Preliminary Approval, instead,

waiting until two weeks after the Order had been entered and filing a Notice of Appeal.

### D.    Injury to Plaintiffs or Defendants

By attempting to remain in the Settlement Class while simultaneously pursuing arbitration and staying the Preliminary Approval Order, Movants will delay the costly and complex class notice process for a 17-million-person class and delay class members' opportunity to recover through the settlement.  The cost of class notice will increase if implementation of the Preliminary Approval Order is further delayed.  (See Sun Decl. ¶ 9 (averring that more than $37,000 has been spent printing the billing notices).)

### E.    Public Interest

The Court has found no violation of Movants' due process rights or rights under the FAA.  Thus, the public interest weighs in favor of an efficient and timely resolution of this complex, class action dispute.  See, e.g., United States v. Glens Falls Newspapers, Inc., 160 F.3d 853, 856-57 (2d Cir. 1998) ("Where a case is complex and expensive, and resolution of the case will benefit the public, the public has a strong interest in settlement.").

Weighing all four factors, the Court concludes that a stay is not appropriate in this case.

Accordingly, based upon the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED**:

1.      Movants Edwin Miller, Vonita Taylor, and Patrick West's
        Motion for Leave to File Reply Brief [Docket No. 564] is
        **GRANTED**.

2.      Movants Edwin Miller, Vonita Taylor, and Patrick West's
        Motion for Stay Pending Appeal [Docket No. 554] is **DENIED**.


Dated:   February 21, 2020          s/ Michael J. Davis
                                    Michael J. Davis
                                    United States District Court