# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

IN RE: CENTURYLINK SALES
PRACTICES AND SECURITIES
LITIGATION

MDL No. 17-2795 (MJD/KMM)

This Document Relates to
Civil File Nos. 17-2832, 17-4613,
17-4614, 17-4615, 17-4616, 17-4617,
17-4618, 17-4619, 17-4622, 17-4943,
17-4944, 17-4945, 17-4947, 17-5046,
18-1562, 18-1565, 18-1572, 18-1573,

**MEMORANDUM OF LAW & ORDER**

Carolyn G. Anderson, Brian C. Gudmundson, Bryce D. Riddle, and Hart L.
Robinovitch, Zimmerman Reed LLP, Plaintiffs' Interim Co- Lead and Liaison
Counsel; Mark M. O'Mara, Alyssa J. Flood, Channa Lloyd, and Caitlin Reese,
O'Mara Law Group, and Mark J. Geragos, Benjamin J. Meiselas, and Lori G.
Feldman, Geragos & Geragos, APC, Plaintiffs' Interim Co-Lead Counsel;
Daniel C. Hedlund and Michelle J. Looby, Gustafson Gluek PLLC, Plaintiffs'
Executive Committee Chair; Richard M. Hagstrom, Anne T. Regan, Nicholas S.
Kuhlmann, and Jason Raether, Hellmuth & Johnson, PLLC, Roxanne Barton
Conlin, Roxanne Conlin & Associates, PC, and Francois M. Blaudeau, W. Lewis
Garrison, Jr., Christopher B. Hood, and James F. McDonough, III, Heninger
Garrison Davis, LLC, Plaintiffs' Executive Committee; and T. Ryan Langley,
Hodge & Langley Law Firm, P.C., Michael Fuller, Olsen Daines PC, Brandon C.
Fernald, Fernald Law Group LLP, Bonner C. Walsh, Walsh PLLC, Alfred M.
Sanchez, and Orin Kurtz, Gardy & Notis, LLP, Counsel for Plaintiffs and the
Proposed Class.

Douglas P. Lobel, David A. Vogel, and Jeffrey M. Gutkin, Cooley LLP; Carolyn J.
Fairless, Michael T. Williams, Andrew Unthank, and Theresa Wardon Benz,

Wheeler Trigg O'Donnell LLP; and William A. McNab and David M. Aafedt, Winthrop & Weinstine, P.A., and Jerry W. Blackwell, Blackwell Burke P.A., Counsel for Defendant CenturyLink, Inc. and the Proposed Intervenors.

Warren D. Postman and Ashley C. Keller, Keller Lenkner LLC; and Robert J. Gilbertson, Samuel J. Clark, Faris Rashid, and Virginia R. McCalmont, Greene Espel PLLP; Counsel for Proposed Intervenors Keisha Covington, Daniel Sokey, Tiffany Van Riper, James Watkins, Jaclyn Finafrock, and Kelly Johnson.

## I.    INTRODUCTION

This matter is before the Court on Defendant CenturyLink, Inc.'s Motion to Enforce Preliminary Approval Order.  [Docket No. 654]  The Court heard oral argument on June 23, 2020.

The Court grants CenturyLink's motion.  Keller Lenkner LLC's clients are represented by sophisticated and experienced counsel, who previously litigated the propriety of this Court's Preliminary Approval Order and are well aware of the minimal requirements for opting out.  The Court will extend the deadline for Keller's clients to opt out in accordance with the Court's requirements until August 25, 2020, and reject the purported requests to opt out contained in Keller's two letters to the Court.

## II.    BACKGROUND

The Settlement Agreement provides: "This Settlement Agreement will not bind Settlement Class Members who timely and validly request to be excluded

(also known as opting-out) of the Settlement." ([Docket No. 469-1] Gudmundson

Decl., Ex. A, Settlement Agreement § 6.2.) The Court approved the procedural

requirements set forth in the Settlement Agreement and directed class members

to comply with them:

> Settlement Class Members may elect to not be part of the Class and
> to not be bound by this Settlement Agreement. To make this
> election, Class Members must send a written notification to the
> Settlement Administrator that (a) clearly identifies the case name
> and number; (b) includes the full name and either the unique
> identification number for the Settlement Class Member assigned by
> the Settlement Administrator, or the Settlement Class Member's
> account number with CenturyLink; (c) includes the address,
> telephone number (optional), and email address (optional) of the
> Settlement Class Member seeking exclusion; (d) is signed by the
> Settlement Class Member; and (e) contains a statement that the
> requestor does not wish to participate in the Settlement. A request
> for exclusion must be submitted no later than one hundred and fifty-
> one (151) calendar days after entry of this Order. Settlement Class
> Members who are opting out must each separately and individually
> comply with the requirements of this paragraph.

([Docket No. 528] Preliminary Approval Order, Jan. 24, 2020 ¶ 6.)

Before the Settlement Administrator sent the Court-approved notices to

class members, it created a unique identification number for each account

number within the Class Period ("settlement identification number"). When the

Settlement Administrator sent the Court-approved notice to class members, each

notice contained a unique settlement identification number.  (Wright Decl. ¶¶ 15-16.)

In its order denying a previous motion to stay proceedings pending appeal brought by clients of the law firm Keller Lenkner LLC ("Keller"), the Court reaffirmed these requirements, explaining:

> Before the Court is a complex, multi-district action involving a Settlement Class of more than 17 million consumers spread across dozens of states that was settled after substantial motion practice, extended negotiations, and extensive confirmatory discovery. . . . The Court's Order set forth an orderly, efficient manner for class members to opt out and, thus, pursue parallel actions, including lawsuits and arbitrations, with little delay.  The Court's chosen process was carefully crafted considering the practicality of efficiently managing a class of more than 17 million consumers and, thus, the possibility of millions of opt-out requests.

In re CenturyLink Sales Practices & Sec. Litig., No. CV 17-2832, 2020 WL 869980, at *5 (D. Minn. Feb. 21, 2020).

On April 7, 2020, Keller filed a letter in this action stating it represented a number of class members who wished to pursue their claims against CenturyLink, Inc. ("CenturyLink") in individual arbitrations and therefore "hereby opted out of the putative class action and the preliminarily-approved settlement."  [Docket No. 631]  Attached to the letter was a list of names, email addresses, telephone numbers, and addresses of approximately 2,000

individuals.  [Docket No. 632]  No account numbers, settlement identification

numbers, or signatures were included for any client.

Of the 1,933 individuals in the mass opt-out list, 11 had already submitted

flat payment ($30) claims to the Settlement Administrator; 1,769 had never filed

an arbitration demand against CenturyLink at the AAA; and 29 were not

previously disclosed to CenturyLink by Keller.  (Wright Decl. ¶¶ 22-24.)  More

than 800 of Keller's clients who did file arbitrations with the AAA in November

2019 do not appear in the mass opt-out list.  (Id. ¶ 24.)

CenturyLink brings the current motion to reject the mass opt out by

approximately 2,000 Keller clients and to require each of the 2,000 individual

Class Members to opt out individually in accordance with the terms of the

Preliminary Approval Order and Settlement Agreement.  In particular,

CenturyLink requests that the Court enforce the requirements that opt-out

requests include an individual signature and either a CenturyLink account

number or a settlement identification number.

On June 23, after oral argument on this motion, Keller filed a new letter

attaching a list of approximately 14,500 "additional clients . . . who informed us

that they would like to opt-out of the class-action settlement."  [Docket Nos. 746,

747]  The attached list identifies each client by name, email address, telephone number, and mailing address.  [Docket No. 747]  The list does not include individual signatures; nor does it include account numbers or settlement identification numbers for any clients.  CenturyLink's preliminary analysis of the list found that more than 250 of those individuals have also made a claim for payment from the settlement fund.  [Docket No. 753]

By letter dated June 26, CenturyLink informed the Court that, on June 23, Keller submitted 4,000 opt-out requests to the Settlement Administrator, each of which includes the name, address, CenturyLink account number or settlement identification number, and an electronic signature for each class member. [Docket No. 754]

## III.   DISCUSSION

### A.   Class Members' Right to Opt Out

Each class member has a due process right to opt out of the class settlement.  Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 812 (1985).  "The right to opt out of a class action is one that must be exercised individually," because "individual class members . . . have the right to intelligently and individually choose whether to continue in a suit as class members."  In re Nat'l Football

League Players' Concussion Injury Litig., No. 2:12-md-02323-AB, 2019 WL 95917, at *5 (E.D. Pa. Jan. 3, 2019) (citation omitted).

**B.     Failure to Include Individual Signatures**

District courts have the discretion whether to accept or reject opt-out requests that violate the Court's signature requirement, because the Court has discretion, in the "interests of justice," to "disregard certain hyper-technical violations of its orders." In re Gen. Am. Life Ins. Co. Sales Practices Litig., 268 F.3d 627, 635 (8th Cir. 2001), vacated sub nom. Henderson v. Gen. Am. Life Ins. Co., 536 U.S. 919 (2002). However, the district court also has discretion to require that opt-out requests be signed by the individual class member and reject requests signed by an attorney. See, e.g., Moulton v. U.S. Steel Corp., 581 F.3d 344, 355 (6th Cir. 2009) (noting that there is no case "that requires district courts to accept opt-out forms signed by attorneys," because "[t]o impose such an unbending rule would unduly interfere with the district court's broad authority to manage class actions by governing the conduct of counsel and the parties") (citation omitted). Such an exercise of discretion to enforce the "common and practical requirement" that each opt-out individual sign their request is appropriate based on "concern about setting precedent for similar requests in the MDL" given "[t]he gargantuan size and extraordinary complexity of this

litigation." In re Deepwater Horizon, 819 F.3d 190, 197 (5th Cir. 2016) (discussing a class with "potentially 200,000 members" where "over 1,700 individuals sent opt-out requests to the claims administrator"). The 17-million-member consumer class in this MDL dwarfs the Deepwater Horizon class. And while the Deepwater Horizon court noted more than 1,700 opt-out requests, this Court must manage more than 16,000 opt-out requests from Keller's clients alone. "The district court has especially strong and flexible managerial power in this highly complex MDL." Id. at 198 (citation omitted).

In this case, the requirement that a class member must individually sign is vital, because it ensures that the class member is individually consenting to opt out, and avoids a third party or lawyer representing that they have that class member's authority, without the class member making an informed, individual decision. Acceptance of an attorney-signed opt out is not required in a case involving more than 16,000 purported of opt outs represented by a single small law firm when there exist questions regarding the informed decision of each client because, for example, hundreds of clients both appear on the opt-out list and have filed requests for recovery under the settlement in this case. As one court noted, mass, unsigned opt outs "are highly indicative of a conclusion that

8

such counsel did not spend very much time evaluating the merits of whether or

not to opt-out in light of the individual circumstances of each of their clients and

in consultation with them."  <u>In re: Oil Spill by the Oil Rig "Deepwater Horizon"</u>

<u>in the Gulf of Mex.</u>, 910 F. Supp. 2d 891, 939 (E.D. La. 2012), <u>aff'd</u>, <u>In re</u>

<u>Deepwater Horizon</u>, 739 F.3d 790 (5th Cir. 2014).  This concerned is heightened

when the evidence in the record indicates that Keller gave the same blanket

advice to opt out to all 22,000 of its clients.  Without a signature, this Court does

not have the necessary information to determine whether each class member

individually and knowingly consented to opt out.

It is a "common and practical requirement" "that an opt out be signed by

the class member, not the attorney, in order to ensure that the exclusion [i]s with

the client's express consent."  <u>In re Deepwater Horizon</u>, 819 F.3d 190, 197 (5th

Cir. 2016) (internal quotations omitted); <u>accord</u> <u>Hallie v. Wells Fargo Bank, N.A.</u>,

No. 2:12-CV-00235-PPSCASE APR, 2015 WL 1914864, at *4 (N.D. Ind. Apr. 27,

2015) ("The requirement that a class member must <u>personally</u> sign her opt-out is

admittedly technical.  . . .  The personal signature requirement also seems to be a

standard requirement in class actions, and it's not onerous.  . . . The requirement

of a personally signed, individual opt-out notice is rational given the court's

interest in avoiding mass or large sub-class opt outs.").  In certain circumstances,

the individual-signature requirement is "not only reasonable, but necessary."

Smith v. SEECO, Inc., No. 4:14-cv-00435 BSM, 2017 WL 4570804, at *7 (D. Ark.

Jan. 18, 2017) (requiring notarization of opt-out requests due to competition

among attorneys for class members in parallel actions), appeal dismissed, 922

F.3d 398 (8th Cir. 2019).

> As one district court recently held:

> The individual signature requirement on opt-out requests is not
> burdensome at all.  Moreover, it ensures that each individual has
> carefully considered his options and understands that he is giving
> up his right to relief under the settlement.  While technology
> provides an avenue for filing claim forms more easily, it also makes
> it easier for third parties and their counsel to file unauthorized mass
> opt-outs, which are sometimes highly indicative of a conclusion that
> such counsel did not spend much time evaluating the merits of
> whether or not to opt-out in light of the individual circumstances of
> each of their clients and in consultation with them.

In re Equifax Inc. Customer Data Sec. Breach Litig., No. 1:17-MD-2800-TWT, 2020

WL 256132, at *26 (N.D. Ga. Mar. 17, 2020) (footnote and quotations omitted).

> As another district court noted in rejecting a lawyer-signed opt-out

request:

> Requiring a personally signed, individual request for exclusion from
> class settlement heightens the likelihood that each class plaintiff will
> make an informed, individualized decision whether to opt out, and

courts want to encourage this careful decisionmaking process. [The attempted opt-out plaintiff's] counsel should have well understood this requirement [because] [t]hey are experienced class action consumer lawyers . . . .

Hallie v. Wells Fargo Bank, N.A., No. 2:12-CV-00235-PPS, 2015 WL 1914864, at *4

(N.D. Ind. Apr. 27, 2015).

The situation in this case is akin to the circumstances faced by the District

of Kansas in In re: Syngenta Ag Mir 162 Corn Litigation:

The record reflects strongly held disagreements between counsel for some putative class members and the court's appointed leadership counsel about how litigation against the [] defendants should be handled.  Moreover, economic incentives exist for counsel who are not part of the leadership to procure opt outs in order to pursue a course in which those counsel might be better situated to earn a fee.  Much information has been disseminated to putative class members in an effort to influence their decisions, some of which is at least arguably inaccurate, which reflects those counsels' zeal.  To ensure that those who actually may possess a potential claim are in fact the decision-makers, it is more than reasonable to require that they take the very minimal effort required to sign and mail an opt out.

No. 14-MD-2591-JWL, 2018 WL 1726345, at *7 (D. Kan. Apr. 10, 2018).

As detailed in relation to CenturyLink's motion to disqualify Keller, there

is evidence that Keller gave generic advice to 22,000 clients that they should all

opt out of this class action, an act that greatly benefits Keller financially because

Keller will earn no attorney's fees if its clients decline to opt out.  The sheer

number of Keller's clients given the size of the law firm and the strong financial

incentive that Keller faces in recommending opt outs raise questions about

whether each of its client's opt-out requests were made individually and

intelligently.  Thus, the Court will enforce the "common and practical

requirement" "that an opt out be signed by the class member, not the attorney, in

order to ensure that the exclusion was with the client's express consent."  In re

Deepwater Horizon, 819 F.3d at 197 (internal quotations omitted).

The original deadline to opt out, object, or submit a claim was June 23,

2020.  CenturyLink and Plaintiffs have agreed to extend the deadline to submit a

claim, object, or opt out until August 25, 2020 for 1.8 million class members who

may not have received notice until June 26, 2020 due to a processing error.  (Joint

Status Report Regarding Notice to Certain Class Members [Docket No. 736].)

Thus, it is reasonable to also extend the deadline to submit a claim, object, or opt

out in compliance with the Court's Preliminary Approval Order for Keller's

22,000 clients until August 25, 2020.

**C.**     **Failure to Provide Account Numbers or Settlement Identification Numbers**

The Court further rejects the opt-out requests from Keller's clients because

they fail to provide account numbers or settlement identification numbers, which

CenturyLink and the Settlement Administrator need in order to confirm that a person opting out is a class member and to identify the claim being opted out of the settlement.

CenturyLink uses unique account numbers for each customer, and some customers have multiple account numbers for different products and services or for different locations.  (Belka Decl. ¶¶ 3-4.)  CenturyLink provided the Settlement Administrator with the account numbers for all class members.  The Settlement Administrator then created a unique settlement identification number for each account in the class.  Each notice sent by the Settlement Administrator includes the unique settlement identification number.  (Id. ¶¶ 6-7.)

The requirement that an opt-out request include either an account number or a settlement identification number is important, because, over time, customers often change their names, addresses, or contact information.  Also, some consumers had multiple accounts over time, such as for different services or products.  (Wright Decl. ¶¶ 6-11.)  Because the account number and settlement identification number do not change for a class member, they provide immediate and certain identification of the class member.  Furthermore, for customers with multiple accounts, the account number identifies which account is being opted

out of the settlement.  (Id. ¶¶ 17-19.)  The difficulty in identifying class members

and accounts by name and address alone is not hypothetical.  For example,

Plaintiff Sara Young-Buck moved from the address where the CenturyLink

service was received but was still responsible for paying the bill; Plaintiff

Christina Scott changed her name to Christina Decker; and Plaintiff Maria Ochoa

brought a claim against CenturyLink in her own name when the service had

been opened in the name of her daughter.  (Wright Decl. ¶¶ 8-10.)

Without properly identifying Keller's clients, CenturyLink's release of

class members would be ambiguous and subject to later attacks that certain

individuals' claims were not actually released.  This would defeat the

fundamental purpose of the settlement.

In the usual case, the fact that a few class members requesting to opt out

fail to include their account number or settlement identification number might

pose a minor, technical error which the Court might overlook if the class member

is identifiable from the other information provided, such as name and address.

However, this is not the usual case.  The class contains more than 17 million

individuals and, already, 16,000 have attempted to opt out en masse, none of

whom attempted to provide their account numbers or settlement identification

number.  It could pose a logistical nightmare if the Court allowed thousands of

class members, all represented by experienced, competent counsel, to simply

flout the Court's order.  The failure to include account or settlement

identification numbers increases the likelihood of future confusion and litigation

regarding who is and is not in the class.  The time and effort spent by the

Settlement Administrator attempting to identify claimants and opt outs would

increase, increasing the administrative costs and decreasing the amount of the

settlement funds available for consumers to recover.

Keller's argument that account numbers and settlement identification

numbers cannot be provided for any of its clients because clients cannot locate

these numbers or locating them would be too cumbersome is belied by the fact

that Keller's clients did provide CenturyLink account numbers for all 1,000

clients when they filed arbitration claims against CenturyLink with the AAA.

(Unthank Decl. ¶ 57.)  Additionally, CenturyLink's June 26 letter to the Court

indicates that Keller was able to provide both account numbers or settlement

identification numbers and individual signatures for 4,000 clients in opt-out

requests provided directly to the Settlement Administrator.  The Court is

incredulous that of the more than 16,000 clients listed in Keller's opt-out letters,

15

not one was able to locate either their CenturyLink account number or their recently provided settlement identification number.

The Court orders that any Keller client who seeks to opt out of this class action must provide their CenturyLink account number or settlement identification number in their opt-out request. If a client seeks to opt out and, after a good faith effort, can locate neither their CenturyLink account number nor their settlement identification number, Keller shall provide that client's name and as much identifying information as possible to CenturyLink's counsel. CenturyLink shall make a good faith effort to locate the account number or settlement identification number for that client. It is incumbent on Keller's clients and Keller to comply with this Court's order. It is incumbent upon CenturyLink to assist in searching for account numbers in the rare cases in which Keller's clients truly cannot locate them. It benefits both sides to work together to enable class members to freely choose whether or not they wish to remain in this class.[1] If Keller's clients truly seek to arbitrate their claims, obtaining their CenturyLink account numbers will assist them in having the information

---

[1] This conversation can constitute the 15-minute conversation per client that CenturyLink was so eager to have and that Keller was so eager to avoid.

necessary to file their arbitration claims.  The Court warns counsel for
CenturyLink and Keller that failure to comply with the Court's order will result
in appropriate sanctions.

### D.     Implications of the <u>Piper Funds</u> Decision

The Court rejects Keller's claim that, under the Eighth Circuit's opinion in
<u>In re: Piper Funds, Inc. Institutional Government Income Portfolio Litigation</u>,
their clients can opt out in any manner they wish because they seek to arbitrate
their claims.  71 F.3d 298 (8th Cir. 1995).  Keller argues that denying an opt-out
request when a class member asserts a right to arbitrate violates the Federal
Arbitration Act ("FAA") and constitutes an abuse of discretion.

In <u>Piper Funds</u>, a class action securities MDL was pending before the
district court when a putative class member, Park Nicollet Medical Foundation
("Park Nicollet"), filed a demand for arbitration against the defendants with the
National Association of Securities Dealers ("NASD") in January 1995.  71 F.3d at
299-300.  Park Nicollet was an investor with a $4.5 million claim against the
defendants.  <u>Id.</u>  In its arbitration demand, as required by NASD rules, Park
Nicollet declared that it elected not to participate in pending putative class
actions.  <u>Id.</u> at 300.  A month later, the defendants and the class action plaintiffs
tentatively settled the class actions.  <u>Id.</u>  In March 1995, Park Nicollet informed

17

the district court that it had "1) chosen to have its dispute with [the defendants] resolved in arbitration, 2) decided not to participate in the putative class actions, and 3) irrevocably opted out of the putative class actions." Id. The next day, March 3, the district court entered an order conditionally certifying the settlement class and enjoining arbitration by any class member until after the court distributed class notice and ruled on requests to opt out of the class. Id. "[T]he district court agreed that Park Nicollet ha[d] a right to arbitrate but enjoined it from pursuing that remedy." Id. at 302. "Park Nicollet moved to vacate the March 3 Order, and to stay the class actions pending arbitration pursuant to § 3 of the FAA." Id. at 300. The district court denied the motion and Park Nicollet appealed. Id.

The Eighth Circuit reversed. First, it reasoned, "Park Nicollet has a contractual right to immediate submission of its securities law claims to arbitration." Id. at 303 (citations omitted). Second, "Park Nicollet's contractual and statutory right to arbitrate may not be sacrificed on the altar of efficient class action management." Id. Third, the Eighth Circuit did "not accept the class action parties' conclusory assertion that immediate arbitration by Park Nicollet (and perhaps others) will frustrate their class action settlement." Id. It reasoned

18

that "it may even assist the settlement process to have arbitration opt outs identified before the final hearing on settlement approval." Id.  The Eighth Circuit concluded that the district court had violated the FAA by enjoining Park Nicollet from arbitrating its claim.  Id.

The Eighth Circuit further held that the district court had erred in denying Park Nicollet's request to opt out.  The Eighth Circuit noted that, generally, it had "no quarrel with the usual practice of not allowing class members to opt out until after the formal Rule 23(c)(2) notice to the class." Id. at 304.  "However, the usual practice [wa]s not appropriate in this case . . . when a class member with an immediate right to arbitrate its claim seeks to opt out." Id.  Park Nicollet had "made an unrefuted showing" of four critical facts:

> it (i) was represented by separate counsel; (ii) had a contractual right to arbitrate any claim encompassed by the class action; (iii) had submitted a claim to the NASD along with a declaration under § 12(d)(2) of the NASD Code that it elected not to participate in the class action; and (iv) now elected irrevocably to opt out of the class action.

Id.  Based on these undisputed facts, the Eighth Circuit held that, under the FAA, the district court was required to take one of three actions:

> it could stay the class action while Park Nicollet's claim is arbitrated; it could deny the request to opt out (for example, because Park Nicollet's arbitration claim is not arbitrable or its request to opt out

19

> was too late); or it could grant the request to opt out, in which case
> Park Nicollet's motion to stay the class action becomes moot.

Id. Because the district court did none of those, the Eighth Circuit reversed the

district court's orders "insofar as (and only insofar as) they affect Park Nicollet,"

ordered the defendants to arbitrate Park Nicollet's claim, and granted Park

Nicollet's request to be excluded from the class. Id. at 304.

Park Nicollet was an institutional investor with its own individual counsel

and a multi-million-dollar claim. The issue of correctly identifying the entity or

person attempting to opt out, as well as which particular claims they are seeking

to exclude, was nonexistent in Piper Funds. There was no confusion as to Park

Nicollet's identity and no need to require further identifying information, such as

an account number, to identify Park Nicollet. The case before this Court is

entirely different. Here, there are more than 17 million class members, including

more than 16,000 purported opt outs represented by one law firm. The class,

including the Keller opt outs, are individuals, many of whom, over time, have

moved addresses, changed names, and had multiple CenturyLink accounts,

including accounts in other family members' names. Logistical obstacles in this

case, which were not present in Piper Funds, dictate a practical requirement to

correctly identify potential opt outs.

20

Additionally, Park Nicollet did not need the heightened procedural

protections that the large number of consumers on Keller's opt-out list need in

this case.  No one in the <u>Piper Funds</u> case questioned whether Park Nicollet's

opt-out request had an adequate and knowing basis.  Here, the filing of

thousands of mass opt outs by Keller, none of which include the required

signatures and identifying information, raise substantial fairness concerns that

were not at issue in <u>Piper Funds</u>.

Additionally, it was undisputed that Park Nicollet's arbitration contract

and the applicable NASD arbitration rules granted it a right to immediate

arbitration and exclusion from the class action.  Keller's clients have not

provided proof that each one has an arbitration contract with CenturyLink, and

none of CenturyLink's arbitration contracts provides an "immediate" right to

arbitrate.  Additionally, only about 160 out of the approximately 2,000 class

members listed in the first opt-out list filed an arbitration demand at the AAA

before asking to opt out.

<u>Piper Funds</u> held that, in that particular case, the district court abused its

discretion by both refusing to stay the case pending arbitration and refusing

allow class member Park Nicollet to opt out because formal class notice had not

yet been sent.  However, the Eighth Circuit did not hold that, generally, a court

cannot impose administrative requirements on opt outs; it simply held that, in

this particular case, the court abused its discretion by enforcing them:

> We have no quarrel with the usual practice of not allowing class
> members to opt out until after the formal Rule 23(c)(2) notice to the
> class.  That practice is administratively efficient, and it helps the
> court ensure that class members make informed decisions whether
> to opt out.  However, the usual practice is not appropriate in this
> case.

Piper Funds, 71 F.3d at 304.

Here, the vast majority of Keller's clients have not even made an attempt

to show that they have initiated an arbitration against CenturyLink or that they

have a contractual right to arbitrate.  Only 6 of the more than 16,000 Keller clients

listed in the opt-out lists have filed a motion to intervene and compel arbitration,

which is hotly contested and will be addressed in a separate order.  Piper has no

applicability to the remaining clients on Keller's opt-out lists.

Accordingly, based upon the files, records, and proceedings herein**, IT IS**

**HEREBY ORDERED**:

Defendant CenturyLink, Inc.'s Motion to Enforce Preliminary
Approval Order  [Docket No. 654] is **GRANTED** as follows:

1. The mass opt outs requested in the letters from counsel at Keller
   Lenkner LLC [Docket Nos. 631, 746] are **REJECTED** because they

do not comply with the Court-ordered requirements for opt-out requests.

2. The deadline for Keller's clients to submit a claim, object, or opt out of this lawsuit is extended until August 25, 2020.

3. Any Keller client who seeks to opt out must send a written notification to the Settlement Administrator that (a) clearly identifies the case name and number; (b) includes the full name and either the unique identification number for the Settlement Class Member assigned by the Settlement Administrator, or the Settlement Class Member's account number with CenturyLink; (c) includes the address, telephone number (optional), and email address (optional) of the Settlement Class Member seeking exclusion; (d) is signed by the Settlement Class Member; and (e) contains a statement that the requestor does not wish to participate in the Settlement.

4. Keller and its clients shall make a good faith effort to obtain their CenturyLink account numbers and settlement identification numbers for their opt-out requests.  If a particular client wishes to opt out and is unable to locate either their CenturyLink account number or their settlement identification number, Keller shall promptly provide as much identifying information as possible regarding that client to CenturyLink, and CenturyLink shall make a good faith effort to promptly locate and share that client's CenturyLink account number.


Dated:  June 29, 2020                    s/ Michael J. Davis
                                         Michael J. Davis
                                         United States District Court