# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

IN RE: CENTURYLINK SALES
PRACTICES AND SECURITIES
LITIGATION

MDL No. 17-2795 (MJD/KMM)

This Document Relates to
Civil File Nos. 17-2832, 17-4613,
17-4614, 17-4615, 17-4616, 17-4617,
17-4618, 17-4619, 17-4622, 17-4943,
17-4944, 17-4945, 17-4947, 17-5046,
18-1562, 18-1565, 18-1572, 18-1573,

**MEMORANDUM OF LAW & ORDER**

Carolyn G. Anderson, Brian C. Gudmundson, Hart L. Robinovitch, and Michael
J. Laird, Zimmerman Reed LLP, Plaintiffs' Interim Co- Lead and Liaison
Counsel; Mark M. O'Mara, Alyssa J. Flood, and Caitlin Reese, O'Mara Law
Group, and Mark J. Geragos and Benjamin J. Meiselas, Geragos & Geragos, APC,
Plaintiffs' Interim Co-Lead Counsel; Daniel C. Hedlund and Michelle J. Looby,
Gustafson Gluek PLLC, Plaintiffs' Executive Committee Chair; Richard M.
Hagstrom and Anne T. Regan, Hellmuth & Johnson, PLLC, Roxanne Barton
Conlin, Roxanne Conlin & Associates, PC, and Francois M. Blaudeau, W. Lewis
Garrison, Jr., Christopher B. Hood, and James F. McDonough, III, Heninger
Garrison Davis, LLC, Plaintiffs' Executive Committee; and T. Ryan Langley,
Hodge & Langley Law Firm, P.C., Michael Fuller, Olsen Daines PC, Brandon C.
Fernald, Fernald Law Group LLP, Bonner C. Walsh, Walsh PLLC, Alfred M.
Sanchez, and Orin Kurtz, Gardy & Notis, LLP, Counsel for Plaintiffs and the
Proposed Class.

Douglas P. Lobel, David A. Vogel, and Jeffrey M. Gutkin, Cooley LLP; Carolyn J.
Fairless, Michael T. Williams, Andrew Unthank, and Theresa Wardon Benz,
Wheeler Trigg O'Donnell LLP; and William A. McNab and David M. Aafedt,

Winthrop & Weinstine, P.A., and Jerry W. Blackwell, Blackwell Burke P.A., Counsel for Defendant CenturyLink, Inc. and the Proposed Intervenors.

Warren D. Postman and Ashley C. Keller, Keller Lenkner LLC; and Robert J. Gilbertson, Samuel J. Clark, Faris Rashid, and Virginia R. McCalmont, Greene Espel PLLP; Counsel for Proposed Intervenors Keisha Covington, Daniel Sokey, Tiffany Van Riper, James Watkins, Jaclyn Finafrock, and Kelly Johnson.

## I.     INTRODUCTION

This matter is before the Court on the Proposed Intervenors and Movants' Motion to Intervene, Compel Arbitration, and Stay Proceedings. [Docket No. 596] The Court heard oral argument on June 23, 2020, and the parties provided further information on the status of the parties during the November 19, 2020 final approval hearing.

## II.    BACKGROUND

### A.     Movants

Movants Keisha Covington, Daniel Sokey, Tiffany Van Riper, James Watkins, Jaclyn Finafrock, and Kelly Johnson ("Movants") are current or former CenturyLink, Inc. ("CenturyLink") customers who wish to resolve their consumer contract disputes with CenturyLink through individual arbitration. (Covington Decl. ¶¶ 3-5; Sokey Decl. ¶¶ 3-5; Van Riper Decl. ¶¶ 3-5; Watkins Decl. ¶¶ 3-5; Finafrock Decl. ¶¶ 3-5; Johnson ¶¶ 3-5.) Movants aver that they

2

have a right to individually arbitrate their claims against CenturyLink under their contract with CenturyLink.  (Covington Decl. ¶ 4; Sokey Decl. ¶ 4; Van Riper Decl. ¶ 4; Watkins Decl. ¶ 4; Finafrock Decl. ¶ 4; Johnson ¶ 4.)  All Movants are represented by the law firm of Keller Lenkner LLC ("Keller").

### B. Keller's Interactions with CenturyLink and Settlement of the Consumer MDL

The relevant background regarding Keller's interactions with CenturyLink and the settlement of this consumer portion of the MDL is set forth in detail in the Court's Order denying CenturyLink's motion to disqualify Keller.  See In re CenturyLink Sales Practices & Sec. Litig., No. CV 17-2832, 2020 WL 3513547, at *1-5 (D. Minn. June 29, 2020).

In December 2019, Keller submitted 1,000 simultaneous arbitration demands against CenturyLink to the AAA on behalf of a subset of its CenturyLink claimant clients.  (Postman Decl. ¶¶ 26, 59; Unthank Decl., Ex. R.)  Movants Covington, Sokey, Van Riper, and Watkins were among those claimants.  (Belka Decl. ¶ 24; Keller Decl., Ex. 3.)  Movants Jaclyn Finafrock and Kelly Johnson were not listed.

On January 9, CenturyLink informed Keller that it was exercising its contractual right to terminate and revoke the arbitration contracts.  (Unthank

Decl. ¶ 72; Unthank Decl., Ex. Y.)  CenturyLink stated that Movants had

"breach[ed]" the arbitration clause in their contracts with CenturyLink and that

CenturyLink "is revoking and terminating your Arbitration Agreement effective

immediately."  (Unthank Decl., Ex. Y.)  The letter further stated that the

remainder of the contracts between CenturyLink and the consumers, apart from

the arbitration clause in Paragraph 17, remained in place.  (Id. ("If you are a

current CenturyLink customer, your services and subscriber agreements (apart

from your Arbitration Agreement) will remain in effect.  CenturyLink reserves

all rights and remedies under your applicable contracts.").)

### C.    Arbitration Contract

Movants seek to compel arbitration under the arbitration provision in

Section 17 of the CenturyLink® High-Speed Internet Subscriber Agreement,

V52.091819 ("Internet Agreement"), entitled the "Dispute Resolution and

Arbitration" provision (the "Arbitration Contract").  (Keller Decl., Ex. 1 § 17.)

According to Keller, each Movant accepted a CenturyLink service

agreement containing the following arbitration clause:

> (a) Arbitration Terms.  You agree that any dispute or claim arising
> out of or relating in any way to the Services, Equipment, Software or
> this Agreement (whether based in contract, tort, statute, fraud,
> misrepresentation or any other legal theory), will be resolved by
> binding arbitration.  This means that the arbitrator, and not any

4

court, shall have exclusive authority to resolve any dispute or claim arising under or relating to (among other subjects) the interpretation, applicability, enforceability or formation of this Agreement, including but not limited to any dispute or claim that all of this Agreement, or any part of this Agreement other than this arbitration provision, is void, voidable, lacking in consideration, illusory, invalid, unconscionable, or for any reason unenforceable. The sole exceptions to arbitration are that either party may pursue claims: (1) in small claims court that are within the scope of its jurisdiction, provided the matter remains in such court and advances only individual (non-class, non-representative, non-consolidated) claims; and (2) in court if they relate solely to the collection of any debts you owe to CenturyLink.  This section shall survive the termination of this Agreement to the greatest extent allowed by law.  . . .

(i) *Arbitration Procedures*.  Before commencing arbitration you must first present any claim or dispute to CenturyLink in writing to allow CenturyLink the opportunity to resolve the dispute.  If the claim or dispute is not resolved within 60 days, you may request arbitration.  The arbitration shall be conducted by the American Arbitration Association ("AAA"). . . . .

(ii) *Costs of Arbitration*.  The party requesting arbitration must pay the applicable AAA filing fee, except that if you are an individual using the Services for household or personal use and you initiate arbitration against CenturyLink: (1) you must pay one-half the arbitrator's fees up to a maximum of $125 if your claim does not exceed $10,000 . . . . . . . If any party files a judicial or administrative action asserting a claim that is subject to arbitration and another party successfully stays such action or compels arbitration, the party filing that action must pay the other party's costs and expenses incurred in seeking such stay or compelling arbitration, including reasonable attorneys' fees.

. . .

> (b) <u>Waiver of Jury and Class Action</u>.  By this Agreement, both you
> and CenturyLink are waiving rights to litigate claims or disputes in
> court (except small claims court as set forth in paragraph (a) above).
> Both you and CenturyLink also waive the right to a jury trial on
> your respective claims, and waive any right to pursue any claims on
> a class or consolidated basis or in a representative capacity.

(Keller Decl. ¶ 4; Arbitration Contract ¶ 17.)

The contract between Movants and CenturyLink also provides that it will be governed by Colorado law.  (Arbitration Contract ¶ 17(a)(i).)

CenturyLink considers the pre-filing presentation of claim requirement an important provision of the Arbitration Contract because it provides CenturyLink the opportunity to evaluate and resolve claims before incurring the costs of legal proceedings.  (Belka Decl. ¶ 6.)  CenturyLink avers that the pre-filing dispute resolution procedures resolve most customers' issues.  (Belka Decl. ¶¶ 10-12.)

### D.   Movants' Current Status

During the November 19, 2020 final approval hearing, Keller informed the Court that Movants Covington, Sokey, Watkins, Finafrock, and Johnson had opted out of the Settlement Class to continue to pursue their arbitration claims. Movant Van Riper stopped responding to Keller and did not submit a valid opt-out request.  As Keller previously admitted, many clients who initially wanted

6

Keller to arbitrate their claims against CenturyLink later changed their mind and

decided to join in the class settlement.  ([Docket No. 715] Postman Decl. ¶ 42.)

## III.   MOTION TO INTERVENE

The Court grants Movants' motion to intervene to allow limited

intervention solely for the purpose of litigating their motion to compel

arbitration.  CenturyLink agrees to this limited intervention.

### A.    Consideration of Movants' Motion

The Court concludes that it may properly consider Movants' motion to

intervene.  First, the Court concludes that Movants' motion to intervene is timely.

Movants filed their motion less than two months after the Court entered the

Preliminary Approval Order enjoining Movants from arbitrating their claims

against CenturyLink.

Second, the Court rejects Plaintiffs' argument that the temporary

injunction in the Court's Preliminary Approval Order prohibits Movants from

intervening.  The Preliminary Approval Order issued by the Court in this action

temporarily enjoined putative Settlement Class Members from "filing,

commencing, prosecuting, maintain, intervening in, participating in (as class

members or otherwise), or receiving any benefits from any class action or other

lawsuit, arbitration, or administrative, regulatory, or other proceeding in any

7

jurisdiction based on or relating to the Released Claims." (Preliminary Approval
Order ¶ 10.) Logic dictates that the phrase "any class action" does not include
**this** federal class action. Otherwise, every absent class member violated the
Court's Order by "participating in" this case "as class members," because the
Order grants "provisional" certification of the proposed class, making the
relevant customers "class members."

### B.   Full Intervention

The Court denies Movants' request for a full intervention as of right or
permissive intervention, because Movants cannot show that they are not already
adequately represented in this case by Class Counsel. Both intervention as of
right and permissive intervention require that the proposed intervenor is not
adequately represented by the existing parties. Swinton v. SquareTrade, Inc., 960
F.3d 1001, 1004–05 (8th Cir. 2020); S. Dakota ex rel. Barnett v. U.S. Dept. of
Interior, 317 F.3d 783, 787 (8th Cir. 2003). "There is a presumption of adequate
representation when the persons attempting to intervene are members of a class
already involved in the litigation or are intervening only to protect the interests
of class members." Swinton, at 1005 (citation omitted). In this case, Plaintiffs
have protected Movants' right to arbitrate. Plaintiffs specifically protected the
rights of persons like Movants who have decided that they do not want to accept

8

the Settlement and want to pursue their claims individually. The Preliminary

Approval Order allows Movants to opt out of the Settlement and temporary

injunction. (Preliminary Approval Order ¶ 6.) Moreover, the preliminary

injunction only applies against "Releasing Parties." (Id. ¶ 10.) Individuals who

opt out of the Settlement Class are not Releasing Parties. ([Docket No. 469-1]

Settlement Agreement ¶¶ 1.35, 1.39, 1.41.) At this time, the preliminary

injunction issue is moot. And five of the six Movants have taken advantage of

the option to opt out. Any alleged prejudice to Movant Van Riper inflicted by

the Settlement is a result of her own inaction and refusal to opt out, as the other

five Movants did, not any failure by Plaintiffs and Class Counsel to protect her

rights.

The fact that Movants wish that Class Counsel had pursued a different

legal strategy regarding arbitration for the Class does not demonstrate

inadequate representation: "[a] difference of opinion concerning litigation

strategy or individual aspects of a remedy does not overcome the presumption of

adequate representation." Swinton, at 1005 (citation omitted).

### C.   Limited Intervention

Although the Court concludes that full intervention is inappropriate,

Movants have demonstrated an interest in the transaction that is the subject of

this action and have demonstrated that they may have that interest impaired by a

class action settlement to which they object, despite their option to opt out.  <u>See</u>

<u>Swinton</u>, at 1004.  Thus, the Court concludes, as CenturyLink concedes, that

permitting limited intervention to allow Movants to argue their motion to

compel arbitration is appropriate in this case.  <u>See, e.g.</u>, <u>Flynt v. Lombardi</u>, 782

F.3d 963, 966-67 (8th Cir. 2015) (holding limited intervention under Rule 24(b)

was appropriate); <u>In re Baycol Prods. Litig.</u>, 214 F.R.D. 542, 544 (D. Minn. 2003)

(granting motion to intervene for limited purpose).

The Court now turns to Movants' arguments regarding their motion to

compel arbitration.

## IV.   MOTION TO COMPEL ARBITRATION

### A.   Federal Arbitration Act

The Federal Arbitration Act ("FAA") provides: "A party aggrieved by the

alleged failure, neglect, or refusal of another to arbitrate under a written

agreement for arbitration may petition any United States district court . . . for an

order directing that such arbitration proceed in the manner provided for in such

agreement."  9 U.S.C. § 4.  Arbitration provisions in written contracts "shall be

valid, irrevocable, and enforceable, save upon such grounds as exist at law or in

equity for the revocation of any contract."  9 U.S.C. § 2.

10

"[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." <u>Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.</u>, 460 U.S. 1, 24-25 (1983) (footnote omitted). "[A]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." <u>AT & T Techs., Inc. v. Commc'ns Workers of Am.</u>, 475 U.S. 643, 650 (1986) (citations omitted). "[A] district court [must] send a claim to arbitration when presented with a broad arbitration clause . . . as long as the underlying factual allegations simply touch matters covered by the arbitration provision." <u>3M Co. v. Amtex Sec., Inc.</u>, 542 F.3d 1193, 1199 (8th Cir. 2008) (citations omitted).

In order to determine if a claim is arbitrable, the Court must first determine whether a valid agreement to arbitrate exists between the parties. <u>Gannon v. Circuit City Stores, Inc.</u>, 262 F.3d 677, 680 (8th Cir. 2001). Next, the Court must decide whether the existing dispute falls under the coverage of the agreement. <u>Id.</u>

When the parties submit evidence outside the pleadings, the Court

considers a motion to compel arbitration under the summary judgment standard.

City of Benkelman, Neb. v. Baseline Eng'g Corp., 867 F.3d 875, 881–82 (8th Cir.

2017).

### B.     Whether Movants' Factual Allegations Touch on Matters Covered by the Arbitration Contract

Movants assert that each of them is party to a valid agreement with

CenturyLink that requires the parties to arbitrate "any dispute or claim arising

out of or relating in any way to the Services, Equipment, Software or this

Agreement (whether based in contract, tort, statute, fraud, misrepresentation or

any other legal theory)." (Arbitration Contract § 17(a).) Each has been a

CenturyLink customer at a time when, according to CenturyLink, becoming a

customer required acceptance of a service agreement containing the

aforementioned arbitration clause. (Keller Decl. ¶ 4; [Docket No. 125] Beard

Decl. ¶¶ 6, 18-25; Movants' Decl. ¶ 3.)

The Arbitration Contract cited by Movants is not the specific Arbitration

Contract that applies to Movants Sokey, Van Riper, Watkins, Finafrock, and

Johnson. Although they represent that they have an agreement to arbitrate with

CenturyLink as set forth in the September 18, 2019 CenturyLink Internet

Agreement, filed as Exhibit 1 to the Keller Declaration, these five Movants

terminated service with CenturyLink before the date that this Internet

Agreement came into existence.  However, CenturyLink has represented that all

internet customers at the time Movants were CenturyLink internet customers

were parties to a substantially similar Arbitration Contract, and it does not allege

that the arbitration clauses in its other consumer contracts are materially

different.  The Court concludes that Movants have sufficiently shown that their

factual allegations touch on matters covered by the Arbitration Contract.

### C.   Whether the Court or Arbitrator Decides Whether Movants Can Enforce the Arbitration Contracts

CenturyLink argues that Movants have no right to arbitrate because they

materially breached their Arbitration Contracts and, in response, CenturyLink

exercised its contractual right to terminate the Arbitration Contracts.

> [C]ourts presume that the parties intend courts, not arbitrators, to
> decide what we have called disputes about 'arbitrability.'  These
> include questions such as 'whether the parties are bound by a given
> arbitration clause,' or 'whether an arbitration clause in a concededly
> binding contract applies to a particular type of controversy.'

BG Grp., PLC v. Republic of Argentina, 572 U.S. 25, 34 (2014) (citations omitted).

This presumption can be overcome only by "'clear and unmistakable' evidence"

that the parties agreed to arbitrate the threshold question of enforceability of the

arbitration contract.  <u>Henry Schein, Inc. v. Archer & White Sales, Inc.</u>, 139 S. Ct. 524, 530 (2019) (citation omitted).

CenturyLink argues that the Arbitration Contract expressly reserves interpretation of the enforceability of the arbitration provision to the Court:

> [T]he arbitrator, and not any court, shall have exclusive authority to resolve any dispute or claim arising under or relating to (among other subjects) the interpretation, applicability, enforceability or formation of this [Internet] Agreement, including but not limited to any dispute or claim that all of this [Internet] Agreement, or any part of this [Internet] Agreement **other than this arbitration[] provision**, is void, voidable, lacking in consideration, illusory, invalid, unconscionable, or for any reason unenforceable.

(Arbitration Contract ¶ 17(a) (emphasis added).)  CenturyLink asserts that the emphasized language, which it dubs the "Delegation Carve Out," demonstrates that the parties specifically agreed not to arbitrate the threshold question of the enforceability of the Arbitration Contract.  On the other hand, Movants interpret the Delegation Carve Out to provide that questions regarding the "enforceability" of the contract are for the arbitrator to resolve, including questions regarding the enforceability of the arbitration clause.  They further assert that the Arbitration Contract incorporates the AAA rules, which grant the arbitrator the power to determine threshold questions of arbitrability.

14

Although the Eighth Circuit has held that incorporation of the AAA rules is sufficient to delegate arbitrability to the arbitrator, see, e.g., Green v. SuperShuttle Int'l, Inc., 653 F.3d 766, 769 (8th Cir. 2011), those cases did not involve express language regarding the delegation of arbitrability.  The AAA expressly allows parties to change any AAA rule in writing, which is what the Delegation Carve Out language purportedly does.  (See AAA Consumer Rule R-1(c), available at https://adr.org/sites/default/files/Consumer_Rules_Web_1.pdf (last visited Dec. 1, 2020).)  See also Enderlin v. XM Satellite Radio Holdings, Inc., 483 F.3d 559, 560–61 (8th Cir. 2007) (finding "meritless" an argument that, because contract incorporated AAA rules and the AAA rules required arbitration of enforceability question, only the arbitrator could decide claim that arbitration clause is unenforceable where the agreement excepted from arbitration any challenges to the enforceability of the arbitration clause); NASDAQ OMX Grp., Inc. v. UBS Secs., LLC, 770 F.3d 1010, 1032 (2d Cir. 2014) (holding that provision that "carves out certain issues from arbitration . . . delays application of AAA rules until a decision is made as to whether a question does or does not fall within the intended scope of arbitration, in short, until arbitrability is decided").

The Delegation Carve Out language in the Arbitration Agreement is not a model of clarity.  It states that the arbitrator has "exclusive authority to resolve any dispute or claim arising under or relating to . . . the interpretation, applicability, enforceability . . . of this [Internet] Agreement."  It then states that this power is "including but not limited to any dispute or claim that all of this [Internet] Agreement, or any part of this [Internet] Agreement **other than this arbitration[] provision**, is void, voidable, lacking in consideration, illusory, invalid, unconscionable, or for any reason unenforceable."  (emphasis added). Movants note that, generally, the phrase "including but not limited to" enlarges a previous clause; it does not restrict it.  Thus, there is no clear language stating that the arbitrator shall **not** determine arbitrability.  However, the most reasonable plain reading of the Delegation Carve Out language is that the "other than this arbitration[] provision" clause excepts allegations that "this arbitration[] provision" is "for any reason unenforceable" from the arbitrator's power.  Otherwise, the inclusion of the phrase "other than this arbitration[] provision" has no meaning and is superfluous.  A court should not interpret a contract so as to render contract language meaningless.  Copper Mountain, Inc. v. Indus. Sys., Inc., 208 P.3d 692, 699 (Colo. 2009).

This interpretation is further bolstered by the Supreme Court's holding

that "courts presume that the parties intend courts, not arbitrators, to decide

what we have called disputes about 'arbitrability.'" BG Grp., PLC, 572 U.S. at 34.

At best, the language in the Delegation Carve Out provision is ambiguous

regarding whether the arbitrator decides arbitrability.  It is certainly not "'clear

and unmistakable' evidence" that the parties agreed to arbitrate the threshold

question of enforceability of the arbitration contract.  Henry Schein, Inc., 139 S.

Ct. at 530 (citation omitted).  See also NASDAQ OMX Grp., Inc., 770 F.3d at 1031

("[W]here a broad arbitration clause is subject to a qualifying provision that at

least arguably covers the present dispute" there is "ambiguity as to the parties'

intent to have questions of arbitrability—which would include whether a dispute

falls within or outside the scope of the qualifier—decided by an arbitrator.").

Thus, the Court will address the question of whether the Arbitration Contract is

unenforceable due to material breach leading to revocation.

### D.    Whether Movants Can Enforce the Arbitration Agreements

#### 1.    Whether a Material Breach Renders an Arbitration Agreement Unenforceable

CenturyLink argues that Movants have materially breached the

Arbitration Contract, which permitted CenturyLink to revoke and terminate the

17

Arbitration Contract.  Under the FAA, arbitration agreements are unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  "[C]ourts must place arbitration agreements on an equal footing with other contracts."  <u>AT&T Mobility LLC v. Concepcion</u>, 563 U.S. 333, 339 (2011).  Arbitration agreements can "be invalidated by generally applicable contract defenses."  <u>Rent-A-Ctr., W., Inc. v. Jackson</u>, 561 U.S. 63, 68 (2010) (citation omitted).  A contract defense is "generally applicable" if it does not "apply only to arbitration or [] derive [its] meaning from the fact that an agreement to arbitrate is at issue."  <u>Concepcion</u>, 563 U.S. at 339.  Applicable defenses include those relating to "performance of the agreement to arbitrate."  <u>Prima Paint</u>, 388 U.S. at 404.  Because the contracts invoked by Movants are governed by Colorado state law, the Arbitration Contract is susceptible to any "generally applicable" contract defense that exists under Colorado law.  <u>See</u> <u>First Options of Chicago, Inc. v. Kaplan</u>, 514 U.S. 938, 944 (1995).

If Movants have materially breached the Arbitration Contract, they cannot force CenturyLink to arbitrate under the Arbitration Contract.  Under Colorado law, a material breach renders a contract unenforceable by the breaching party.  <u>See, e.g.</u>, <u>Coors v. Sec. Life of Denver Ins. Co.</u>, 112 P.3d 59, 64 (Colo. 2005).  This

principle applies to the material breach of arbitration agreements.  See Rodriguez v. Wet Ink, LLC, No. 08-CV-00857-MSKCBS, 2011 WL 1059541, at *4 (D. Colo. Mar. 22, 2011) (holding that, under Colorado law, material breach of arbitration agreement prevents breaching party from compelling arbitration).  See also Brown v. Dillard's, Inc., 430 F.3d 1004, 1009-10 (9th Cir. 2005).  Contrary to Movants' argument, these cases do not look to whether the party seeking to compel has materially breached the entire contract, but rather, look to whether they have specifically breached the agreement to arbitrate.  If a material breach occurred, the entire contract is not rescinded.  Rather, the breaching party is simply unable to compel arbitration.  See, e.g., Coors, 112 P.3d at 64 (noting that "material breach deprives party of right to demand performance by other").

## 2.    Whether Movants Materially Breached the Arbitration Contract

A breach is material when the breach goes to the "root of the matter or essence of the contract."  Coors, 112 P.3d at 64.  Arbitration agreements are materially breached when their fundamental purpose is thwarted, such as by conduct that defeats the efficiency and fairness of arbitration or appears designed to prevent fair resolution of disputes on the merits.  See, e.g., Hooters of Am., Inc. v. Phillips, 173 F.3d 933, 939-40 (4th Cir. 1999) (holding arbitration agreement

unenforceable because one party to agreement employed unfair rules that "creat[ed] a sham," depriving the other party of "a system whereby disputes are fairly resolved by an impartial third party"); <u>Roach v. BM Motoring, LLC</u>, 155 A.3d 985, 995 (N.J. 2017) ("[W]e hold that defendants' knowing refusal to cooperate with plaintiffs' arbitration demands [by failing to pay the AAA fees or respond to the plaintiffs' arbitration demands], filed in reasonable compliance with the parties' agreement, amounts to a material breach of the [arbitration agreement] and, as such, bars the breaching party from later compelling arbitration.").

CenturyLink argues that Movants' and Keller's conduct constitutes a material breach because it destroyed the fundamental purpose and value of the Arbitration Contract.

### a)     Simultaneous Filing of Numerous Claims

The Court holds that Movants did not materially breach the Arbitration Contract by breaching the class action waiver (Arbitration Contract at ¶ 17(b)) and simultaneously filing a large number of individual demands for arbitration. Keller attempted to leverage a mass settlement on behalf of all of its clients and refused to individually negotiate each claimant's claim.  However, Keller filed

individual arbitration claims for each claimant.  None of its claimants assert that

they represent anyone else or seek recovery beyond the damages which they

claim that they are individually owed.  Moreover, there is no allegation that any

claimant who has filed an arbitration claim waited too long to do so, so the fact

that Keller "stockpiled" claims and then filed 1,000 timely claims at one time

does not to violate any provision of the Arbitration Contract.  CenturyLink wrote

the Arbitration Contract; if its system is overwhelmed by 1,000 individual claims

being filed simultaneously, it can alter its system or the filing requirements in the

Arbitration Contract.

### b)    Engagement in Pre-Arbitration Dispute Resolution

The Arbitration Contract provides:

> Before commencing arbitration you must first present any claim or
> dispute to CenturyLink in writing to allow CenturyLink the
> opportunity to resolve the dispute.  If the claim or dispute is not
> resolved within 60 days, you may request arbitration.

(Arbitration Contract ¶ 17(a)(i).)  CenturyLink asserts that Movants gave it no

opportunity to understand, evaluate, or resolve their claims on the facts and

merits, because they refused to provide basic information about their claims

before filing their arbitration demands.  Thus, they defeated the purpose of the

Arbitration Contract by undermining the opportunity for pre-arbitration

21

individualized resolution and by seeking to impose arbitration fees and costs on

CenturyLink that the Arbitration Contract is intended to avoid.

Keller's pre-arbitration demand consisted of a generic complaint alleging

overcharging and fraud and a list of 9,000 clients with their names, phone

numbers, emails, and addresses.  (Unthank Decl., Ex. H.)  There was no

statement of each claimant's individual damages, what they claim they were

quoted, what they claimed they were charged, when this overcharging occurred,

or any other specific information that CenturyLink desired in order to attempt to

address their claims.  In order for CenturyLink to have "the opportunity to

resolve the dispute," it appears logical that the claimant must inform

CenturyLink what the dispute is.  Keller's refusal to provide any information

other than the Movants' contact information was compounded by Keller's refusal

to discuss any individual client's claims with CenturyLink pre-arbitration.  Thus,

CenturyLink has a colorable argument that Movants breached the Arbitration

Contract by failing to "present any claim or dispute to CenturyLink in writing to

allow CenturyLink the opportunity to resolve the dispute."  However, the Court

will not decide whether such a breach occurred because, assuming it did, the

Court holds that this was not the type of material breach that goes to the "root of

the matter or essence of the contract" and, thus, "deprives [Movants] of [the] right to demand performance by [CenturyLink]." <u>Coors</u>, 112 P.3d at 64. Unlike in cases cited by CenturyLink in which courts held arbitration agreements unenforceable for material breach, Movants have not refused to pay a filing fee, refused to participate in an arbitration, or designed an arbitration process that was so biased and one-sided as to be a sham. <u>Cf., e.g.</u>, <u>Hooters of Am., Inc.</u>, 173 F.3d at 939-40; <u>Roach</u>, 155 A.3d at 995. At most, Movants' breach deprived CenturyLink of the benefit of its pre-arbitration resolution requirement, but not of the Arbitration Contract in general. CenturyLink still had the ability to and economic means to engage in timely arbitration with each of the claimants who filed a claim through a process following standard AAA rules before AAA arbitrators. Thus, Movants' actions did not constitute a **<u>material</u>** breach. And because Movants did not materially breach the Arbitration Contract, CenturyLink's purported revocation and termination of Movants' arbitration contracts was ineffective.

Although the Court concludes that the breach is not material, CenturyLink may still raise the issue of Movants' inadequate pre-filing claim presentation before the arbitrator because the arbitrator decides questions of procedural

arbitrability.  The question of whether Movants properly fulfilled the procedural

prerequisites for filing an arbitration claim, rather than the question of whether

they committed material breach, is one for the arbitrator.  See, e.g., Int'l. Ass'n of

Bridge, Structural, Ornamental, & Reinforcing Ironworkers, Local 493 v. EFCO

Corp. & Constr. Prods., Inc., 359 F.3d 954, 957 (8th Cir. 2004) ("[T]he question of

whether the procedural prerequisites have been complied with or . . . waived . . .

is a matter for the arbitrator and not for the court.").  "[Q]uestions of whether

waiver occurred and whether demand was sufficient and timely under the

agreement, involve issues of procedural arbitrability, matters presumptively for

the arbitrator, not for the judge." Pro Tech Indus., Inc. v. URS Corp., 377 F.3d

868, 872 (8th Cir. 2004) (citations omitted).

## V.   MOTION TO STAY

The Court denies Movants' motion to stay the entire consumer MDL

proceeding until Movants have completed their arbitrations against

CenturyLink.  Five of the Movants have opted out of and been excluded from the

Class, while, as represented by Keller, Movant Van Riper has abandoned her

pursuit of arbitration and apparently made the decision to not opt out and, thus,

remains in the Class and is voluntarily bound by the Settlement Agreement.  As

to all six Movants, their motion is now moot.  Once Movants' request to opt out

of this lawsuit was granted, then they are no longer part of the lawsuit and there is no basis to stay the MDL while they are arbitrating their claims against CenturyLink.  See In re Piper Funds, Inc., Institutional Gov't Income Portfolio Litig., 71 F.3d 298, 304 (8th Cir. 1995)

Moreover, once the five Movants who sought to opt out are removed from the class, between CenturyLink and the remaining 17.2 million class members, no party any longer seeks arbitration.  "[A]rbitration under the [Federal Arbitration] Act is a matter of consent, not coercion."  AgGrow Oils, L.L.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 242 F.3d 777, 782 (8th Cir. 2001) (citation omitted).  If all parties seek to resolve their claims in this Court and not through arbitration, there is no basis to require their claims be arbitrated.  And the decision to stay litigation among the non-arbitrating parties "is one left to the district court . . . as a matter of its discretion to control its docket."  Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 21 n.23 (1983).  In this case, staying litigation among the 17.2 million non-arbitrating class members and CenturyLink when the Settlement has been approved and the claims have already been submitted is nonsensical and will prejudice class members by delaying their recovery from a defendant that seeks to pay them.  There is no risk

of inconsistent rulings because the arbitrations are individual arbitrations, with

no class claims, and the class claims are being resolved through a settlement

agreement with no Court ruling on liability and that excludes any class member

who opts out.

Accordingly, based upon the files, records, and proceedings herein**, IT IS

HEREBY ORDERED**:

Proposed Intervenors and Movants' Motion to Intervene, Compel
Arbitration, and Stay Proceedings [Docket No. 596] is **GRANTED
IN PART** and **DENIED IN PART** as follows:

1.      Movant's motion to intervene is granted insofar as they
         are permitted limited intervention for the purpose of
         litigating their motion to compel arbitration only.

2.      Movants Keisha Covington, Daniel Sokey, James
         Watkins, Jaclyn Finafrock, and Kelly Johnson's motion
         to compel arbitration against CenturyLink, Inc. is
         **GRANTED**; and Movant Tiffany Van Riper's motion to
         compel arbitration is **DENIED AS MOOT**.

3.      Movants' motion to stay is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated:   December 4, 2020                    s/ Michael J. Davis
                                             Michael J. Davis
                                             United States District Court

26